SARAH TREAT and another *against* PECK and another.

The conservator of an idiot is not empowered, by virtue of his office, to make a lease of such idiot's real estate ; the statute having given this power exclusively to the county court.

Nor has the conservator, by virtue of his office, any right or authority to sell and dispose of timber and fire-wood growing on the idiot's land.

If the lessee of a conservator commit waste, by cutting timber and fire-wood, the estate at will is, *ipso facto*, determined ; the tenant becomes a trespasser *ab initio ;* and the idiot, being the general owner of the land, may maintain trespass *quare clausum fregit.*

This was an action of trespass *quare clausum fregit*, alleging, that the defendants, on the 1st of *September*, 1815, entered upon the land of the plaintiffs, lying in a place then called *North-Milford*, now called *Orange*, and between that day and the commencement of the action, cut down and carried away from the premises 400 large trees, 300 cords of wood, &c.

The cause was tried at *New-Haven, January* term, 1824, before *Bristol*, J.

The plaintiffs are, and during the period in question, have been, idiots, residing in *Roxbury*, in *Litchfield* county. In the year 1815, *Joseph Smith*, of *Roxbury*, was appointed their conservator, and remained in that capacity until *April*, 1822, when he was removed, and *John Trowbridge* was appointed in his place. On the 10th of *November*, 1818, *Smith*, in his capacity of conservator, leased the land described in the declaration to *Asahel Bacon*, of *Roxbury*, for the term of one year from the 1st of *April* then next ; and this lease *Bacon* assigned to *Peck*, one of the defendants. On the 26th of *January*, 1819, a similar lease was executed, by the same parties, for one year from the 1st of *April*, 1820 ; which was assigned in the same manner. On the 26th of *March*, 1821, *Smith* executed a similar lease directly to *Peck*, for one year from the 1st of *April* then next. Under these leases *Peck* entered upon, and occupied, the land, paying rent according to the terms of such leases ; and the entry of *Bull*, the other defendant, and all that he did, was by the

licence of *Peck*, and in pursuance of an agreement with him. The whole of the timber and wood cut, by the defendants, on the premises, was cut and carried away by them, by agreement with *Smith*, acting as conservator; and part was delivered to persons to whom he had sold it, to pay the debts of the plaintiffs and to obtain necessaries for their support; and of the remainder the defendants themselves became the purchasers, and paid the full value thereof to *Smith*, while he was conservator, who accepted it in payment, and applied it in support of the plaintiffs. The defendants, however, did not produce any account, rendered by *Smith*, as conservator, to the county court from which he derived his appointment, accounting for the avails of such timber and wood, nor any proof that his proceedings had been authorized or approved by such court. No part of the timber and wood cut and carried away by the defendants, was for the actual use of the plaintiffs, except in the manner before stated; and such timber and wood was young and growing, not perishing by decay.

The judge instructed the jury, that this action was maintainable, notwithstanding the leases from *Smith*, as he had no authority to make them, by virtue of his power as conservator; that, as conservator, he had no right or authority to sell and dispose of such timber and wood; nor, after agreeing with the defendants to do so, to receive compensation and satisfaction therefor, so as to discharge the defendants from the trespass, of which he was equally guilty with them.

The jury returned a verdict for the plaintiffs; and the defendants moved for a new trial, on the ground of a misdirection.

*Daggett* and *Staples*, in support of the motion, contended; 1. That a conservator has, by virtue of his office, the power of making a lease of the idiot's land. The statute has committed the guardianship of idiots, and of their *estates*, without discrimination or restriction, to the county court. The power thus given, is, to order and dispose of the persons and estates of such idiots; and this power is to be exercised, either by the court itself, or through a conservator. *Stat.* 383. *tit.* 88. *c.* 1. *s.* 4 ed. 1808. By the appointment of a conservator, the court delegates to him, subject to his liability to account, all its power, conferred by the provisions referred to, over the person and estate of the idiot; the power to order a *sale*, conferred by a subsequent section of the statute, having no bearing on this

New-Haven,
June,
1824.

Treat
v.
Peck.

subject. If, then, the county court has the power of leasing the idiot's estate, before the appointment of a conservator, the conservator has that power, afterwards. If the conservator has not the power, no one has. In many cases, the power to lease the the idiot's estate, is indispensibly necessary, as it was in this case, to enable the conservator to take proper care of such estate. The expression " to take care of," must be understood with reference to the subject matter; to the exigency of the case; to the object of the legislature, which was, that the conservator should do all those things, which a prudent man would do, for the support of the idiot.

2. That the plaintiffs, not being in possession, could not maintain trespass *quare clausum fregit.* This action can be maintained only by the person who has the possession *in fact* of the land; a general property, in the case of real estate, not being, as it is in the case of personal, sufficient. *Campbell* v. *Arnold,* 1 *Johns. Rep.* 511. *Tobey* v. *Webster,* 3 *Johns. Rep.* 468. The plaintiffs were out of possession in fact The conservator had taken possession; and he had put others in, under him. Let it be conceded, in this part of the case, that the conservator was not authorized to execute a lease. Still he had *some* authority over the land in question. He had a right to take possession of it, that he might *take care* of it; and he did take possession of it, for this purpose. The idiots, then, were out of possession, at the time the injuries complained of, were done.

A conservator in possession, is not a tenant at will, or a tenant of any other description known to the common law. He is precisely what the statute has made him—*i. e.* a person rightfully in possession, for a specific purpose.

*J. Strong* and *R. I. Ingersoll,* contra, contended, 1. That a conservator is a mere bailiff of the idiot's estate, and cannot encumber it, by a lease or otherwise, nor authorize waste. There is a strong analogy between the powers of a committee of lunacy in *England,* and of a conservator under our statute. Both are to *take care of* and *oversee* the idiot and his estate. Both are *accountable ;* one to the Lord Chancellor, the other to the county court. The powers of both are *delegated* powers. But it is settled law, that the committee of a lunatic cannot make a lease of the lunatic's land. *Foster* v. *Merchant,* 1 *Vern.* 262. *Knipe* v. *Palmer,* 2 *Wils.* 130. 2 *Madd. Chan.* 584. 3 *Bac. Abr.* 530. (*Gwil.* ed.)

If it be said, that a conservator is a creature of our own stat-

New-Haven, June, 1824.

Treat v. Peck.

ute; and that his powers must depend solely upon the true construction of that statute; let the case be brought to this test. The only power, which the statute confers upon the conservator, or authorizes the county court to delegate to him, is, to *take care of* and *oversee* the idiot and his estate. This makes him only a *servant*. He is the *overseer*; the *hired-man*. He has *no interest* whatever in the estate.

Nor is there any *necessity* for the exercise of this power, by the conservator. It belongs, unquestionably, to the county court; and may be exercised, by that body, whenever the exigency of the case requires it. The statute authorizes the county court to order and *dispose of* the estate of the idiot, in such manner as they judge best for and towards his support. These expressions are sufficiently general and comprehensive to include the power *to lease*. Besides, the power *to sell*, is afterwards expressly given to the county court; a power, which implies a power to lease, on the principle that *omne majus continet in se minus.*

2. That the plaintiffs were entitled to bring trespass *quare clausum fregit* for the injuries done by the defendants. First, the conservator is not in possession, having only the care and oversight of the estate. Secondly, if the conservator was tenant at will, and the wrongful acts complained of were done by his agency, the tenancy was thereby terminated, and the plaintiffs may well sustain the action they have brought. The conservator clearly had no right to cut down and sell timber trees. This was an abuse of the trust confided to him; and was, *ipso facto*, a trespass. *Com. Dig. tit.* Trespass. B. 2. C. 2. Thirdly, whether the conservator was, in any sense, in possession, or not, the plaintiffs were never out of possession so as to preclude them from bringing trespass for a permanent injury to the freehold. *Starr* & al. v. *Jackson*, 11 *Mass. Rep.* 519.

3. That one joint trespasser cannot purge the trespass, by settling with a co-trespasser; and if he could, the record of the county court, to which the conservator must make return of his proceedings, being the best evidence, should be produced. His own parol declarations are insufficient.

HOSMER, Ch. J. The plaintiffs have brought an action of trespass against the defendants, for entering their close, and cutting and carrying away their timber and wood. The defendants have attempted a justification, by virtue of leases given to one of them, by the plaintiffs' conservator, under which the premises

were possessed ; by agreement with him to do the acts complained of, in order to pay the plaintiffs' debts and obtain necessaries for their support ; and by having settled with the conservator, and procured his release. The court instructed the jury, that notwithstanding the leases, the action of trespass was maintainable, as the conservator had no authority to make them; that he had no right or authority to dispose of the timber and wood on the premises ; nor to receive satisfaction for it, so as to discharge the trespass, of which he was equally guilty with the defendants. It is the object of the motion, to review the correctness of this charge to the jury.

The first enquiry made, relates to the legal power of the conservator. If he had the authority, supposed by the defendants, it is undeniable, that the lessee was tenant for years ; and the plaintiffs, so far from having had possession of the premises, at the time of the acts done, had only a reversionary interest. The question depends on the construction of the statute "for relieving and ordering of idiots." *P.* 382. ed. of 1808. By the 4th section of this law, the county court of the county where the idiots dwell, if they have any estate, "may order and dispose thereof, *in such manner as they shall judge best*, for and towards the support of such persons" Had the law stopped here, it would be unquestionable, that the estates of idiots would be subjected, without limitation, to the discretion of the county courts, to be disposed of for their support. It is equally clear, that such estates are now at the disposal of the above courts, in fulfilment of their trusts, except so far as this authority is impaired, by other expressions in the above law. In the section before cited, the county courts are authorized to appoint and empower " some meet person a conservator, *to take care of and oversee* such idiots, &c. and their estates, for their support, who shall be accountable to said courts for their management of such trust." The operative words, defining the authority of a conservator, are, " *to take care of and oversee*" such idiots and their estates, for their support. If the expression is construed according to the popular meaning, it is impossible that the mind should be left in doubt as to its meaning. When expounded in reference to the subject matter, by the words " to oversee," the conservator is authorized to superintend ; and by the expression " to take care of," it is made his duty to assume the requisite charge, in order to the preservation and profit of the estate. This literal construction of the law confers no right to sell, or lease the property ; nor is it extended at

all, by the object, which the legislature had in view. It was their intent to procure an income from the use of the idiot's estate, by its superintendency and oversight; and this trust was to be committed exclusively to the conservator. His power was wholly confined within these boundaries.

The enquiry, however, naturally arises, how is the idiot to be supported, if the estate, through its deficiency, or other cause, should be required to be sold or leased? Undoubtedly, it *must* be sold or leased; but the question remains, who is to perform these necessary acts? The answer is obvious; *those who have the authority;* and this brings us back to the enquiry, has this authority been devolved on the conservator?

I have recited enough of the statute to show, that no such power has been imparted to him; but that this authority is communicated, in the most explicit language, to the county court. They have sovereign power to *order* and *dispose* of the estates of idiots for their support, "in such manner as they shall judge best." It is not within the compass of language to grant unlimited dominion, in terms more perspicuous. The 5th section of the law terminates all possible doubts on this subject. "When it shall appear to the respective county courts," says the law, "upon the liquidation and adjustment of the [conservator's] accounts exhibited to them, pursuant to the provisions of this act, that the debts so ascertained shall exceed the personal estate of such idiot, &c., it shall be lawful for the said courts respectively to order the *sale* of so much of the real estate of such person or persons as shall be sufficient to pay the same." This clause necessarily implies the following positions. First, that the real estate of the idiot may not be disposed of, to any extent, so long as any personal estate remains. Secondly, that by way of condition precedent, the conservator shall exhibit his accounts to the county court, who must ascertain the necessity of a sale of the real estate, and then, and *then only*, make the requisite order; not for the disposition of all the property, but of *so much only*, as the exigency of the case demands. This clause alone, upon the principle that *omne majus in se continet minus*, might, not unreasonably, be considered as giving to the courts authority, to order the estate to be *leased;* but this construction is rendered unnecessary. When taken in connection with the 4th section, it is clear beyond a question, that the county courts have unlimited authority over the estates of idiots, to sell them, when necessary, and to dispose of them, in any *other manner*, which, in their discre-

Treat
*v.*
Peck.

tion, they shall deem best. But the conservator has no such authority; and can only exercise the power of a bailiff, by oversight, superintendency, and applying the temporary profits to the use of the idiot. The moment we pass this bound, we declare the legislature to have empowered two jurisdictions, which may conflict, to sell and dispose of the estates of idiots; and thus, in opposition to the words and reasons of the law, an authority would be given to the conservator to intermeddle with the real estate, before any necessity is ascertained by the court, and by his leases, to tie up their hands, and frustrate the discretion, which the sovereign power has thought safe and proper to vest in them alone.

The construction given to the law is too unquestionable to require any collateral confirmation. At the same time, I think proper to remark, that the distinct authority imparted to the county courts, and the conservators of idiots, was, undoubtedly, by analogy to the distinct powers vested in *England* in the Lord Chancellor and committee of idiots. The parallel is too obvious to be mistaken. The King, who has authority by law over idiots, commits the administration of their estates to the Lord Chancellor, with special authority to make grants, from time to time, of their estates The legislature of *Connecticut,* possessed of undoubted power, have committed the estates of idiots to the county courts, to order and dispose of them as they shall judge best for the idiot's support. The Lord Chancellor appoints a committee of the idiot's estate, by virtue of which he has a superintendency of it, for the idiot's support; but he may not make leases, or encumber the estate, without leave of the court. *Foster* v. *Merchant,* 1 *Vern.* 262. In *Connecticut,* the county courts appoint a committee of the idiot, under the denomination of a conservator, to take the oversight of his estate, for his support; but to him, by virtue of his appointment, no authority is given to sell, lease or encumber, in any manner, the idiot's estate, unless by the county court, he is specially authorised. In *England,* the committee is made accountable to the Chancellor; and in *Connecticut,* to the county courts, the conservator is bound to render an account of his administration. A person must wink extremely, or he cannot fail to see, that one of these systems is the prototype of the other.

I can entertain no doubt of the precise correctness, with which the judge, in this case, charged the jury. The leases of the conservator were unauthorized and void; and equally so, was the disposition of the wood and timber, an essential part of

the freehold, and the settlement with the defendants. The inference cannot be resisted, that the conservator was alike guilty with the defendants of committing a wrong.

Admitting this, the defendants have contended, that they were in the occupation of the land; and that the plaintiffs, not having the actual possession, cannot sustain the action of trespass.

It is unquestionably true, that this action is founded upon possession, insomuch that possession, without legal title, is sufficient to maintain the suit against a wrong-doer. The question then arises, were the plaintiffs in possession.

The cases cited from the reports of determinations in the states of *New-York* and *Massachusetts*, in which there is a conflict of opinion, have no bearing on the case under discussion. *Campbell* v. *Arnold*, 1 *Johns. Rep.* 511. *Tobey* v. *Webster*, 3 *Johns. Rep.* 468. *Starr* & al. v. *Jackson*, 11 *Mass. Rep.* 519. In these cases, the actions were brought by the landlord against strangers, or tenants at will, being in the actual possession of the premises, for a trespass committed by them. In the case before us, trespass is instituted against the tenant at will, for committing waste, by the cutting of wood and timber, to the destruction of the owner's property. By this act, the estate at will terminated, and the possession of the defendants was that of trespassers only, from the first stroke given in felling the trees. The principle is well stated, in the Countess of *Shrewsbury's* case, 5 *Co.* 13. *b.* "If a lessee at will commits voluntary waste, *scil.* in abatement of the houses, or in cutting of the woods, there a general action of tresspass lies against him. For, as it is said, in 2 & 3 *Phil. & Mar. Dyer* 122. *b.* where tenant at will takes upon himself to do such things, which none can do but the owner of the land, these amount to a determination of the will, and of his possession, and the lessor shall have a general action of trespass, without any entry; and there 15 *E.* 4. 20. *b.* is cited, that if a bailee of goods, as of a horse, &c. kill them, the bailor shall have a general action of trespass; for by the killing, the privity was determined." To this effect, so far as I know, are all the cases, both antient and modern. *Co. Litt.* 57. *a.* Countess of *Salop* v. *Crompton, Cro. Eliz.* 784. *Com. Dig. tit.* Estates. H. 5. and *tit* Trespass. B. 2. *Bac. Abr. tit.* Tresspass. G. 2. *Phillips* v. *Covert* & al. 7 *Johns. Rep.* 1. It is therefore unquestionable, that the possession of the premises was in the plaintiffs; and that the defendants can be considered in no other light, than as if they had unwarrant-

ably entered on the land. Of consequence, trespass is the proper and only action, which the plaintiffs can sustain.

The determination of the court below was entirely correct; and a new trial ought not to be granted.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial not to be granted.