THE STATE OF CONNECTICUT *vs.* ALANSON WASHBURN ET AL.

Second Judicial District, Norwich, October Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

An investment by a conservator of his ward's funds in promissory notes secured by a mortgage of land in another State and guaranteed by a corporation, is not one recognized, either by statute or common law, as belonging to the class of investments generally appropriate for trust funds. To justify such use of the funds the conservator must prove not only good faith, but due diligence on his part in ascertaining by

specific inquiries the pecuniary responsibility of the maker of the notes, the value of the land mortgaged to secure them, and the credit and responsibility of the corporation which guaranteed them. In the absence of personal knowledge on his part, it is not due diligence for him to accept and purchase the securities, upon the bald assertion of the broker who had them for sale, that they were perfectly safe.

The general rule of equity which warns a trustee not to sell, without sufficient reason, a trust fund received by him and properly secured, applies with peculiar force to a conservator who receives the estate of his ward safely invested in securities expressly authorized by statute. If under such circumstances he makes a change of investment, without an order of the Court of Probate, he assumes, in an action on his bond, the burden of proving a reasonable cause for the change; and failing in such proof he may properly be held liable, irrespective of his good faith in the transaction.

Damages in such case, where the ward has exercised his right of rejecting the unauthorized investment, should be the value of the securities at the time of the unlawful sale, together with the amount of dividends which they would have produced if no change had been made, less any interest on the rejected investment received and used for the benefit of the ward; interest will not be compounded when the conservator acted in good faith.

Evidence that others in the neighborhood, of ordinary prudence and discretion in financial matters, about the same time, but not in the presence of the conservator, purchased some of the same securities as an investment for themselves, is irrelevant to show due diligence on the part of the conservator.

[Argued October 15th, 1895—decided January 6th, 1896.]

SUIT on a probate bond given for the faithful discharge by the defendant Washburn, of his duties as conservator of the estate of one Richard D. Rose; brought to the Superior Court in Tolland County where the case was, by agreement of the parties, referred to the Hon. Dwight Loomis, State Referee, to find and report the facts. The court, *Prentice, J.*, accepted the report of the State Referee and, with consent of the parties, reserved the questions of law arising thereon for the consideration and advice of this court. *Judgment advised for plaintiff, after a further finding as to the amount of damages.*

The pleadings admitted the execution of the bond, and that the defendant Washburn, described in the bond as conservator of Richard D. Rose, received as such conservator, and as belonging to the estate of his ward, money in savings

banks in this State to the amount of $3,648.61, and that said Washburn invested a portion of these funds in seven promissory notes of $500 each (known as the " Barton bonds "), secured by mortgage on land situate without the State.

The material issues of fact raised by the pleadings were: Did Washburn, in his management of the funds invested in the savings banks, act with ordinary and reasonable prudence and discretion; the amount of money withdrawn from the savings banks and invested in the Barton bonds; the amount of the damages?

As to the facts in issue, the referee reported in substance as follows :—

The money in savings banks received by the defendant Washburn, was believed to be invested in safe and sound banks, which were paying dividends at the rate of four per cent per annum.

Prior to August 19th, 1884, Washburn bought of Samuel Bingham four of the Barton notes; two of which were dated July 15th, 1884, secured by mortgage on eighty acres of land in Indiana, and guaranteed by the Continental Life Insurance Company, and two of which were part of an issue of twenty-four notes of $500 each, dated July 8th, 1884, secured by mortgage of the same date from Barton to said Bingham, of a piece of land in the city of Indianapolis, Indiana, and guaranteed by the Continental Life Insurance Company. Prior to October 15th, 1886, Washburn bought of Bingham three more notes of the issue of July 8th, 1884.

At the time of the purchase, Barton was financially irresponsible. The land securing the notes did not equal in value half their amount. The solvency of the Continental Life Insurance Company had been publicly questioned in an investigation authorized by the General Assembly, and it was in fact hovering on the verge of bankruptcy, although its annual reports to the insurance commissioner showed a solvent condition, and the State authorities permitted it to do business as a solvent company until 1887, when it went into the hands of a receiver; it will pay a small dividend on its liabilities. The notes endorsed in blank by Barton, had

been delivered to Bingham; he was in fact a trustee, but this did not appear on the face of the deed or notes; he received a commission from the insurance company, but this was unknown to Washburn, who had long known Bingham and regarded him as a man of strict integrity and of good judgment in financial matters, and for a long time previous had had dealings with him in business affairs. Bingham was generally regarded by the people of the vicinity, and by those who had frequent transactions with him, as an honest man and of good judgment in financial matters.

Before purchasing, Washburn told Bingham he wished to purchase some good securities in behalf of another, and wanted the investment perfectly safe. Thereupon Bingham recommended the notes in question, saying they were good as gold; that the guaranty of the Continental Life Insurance Company made them doubly safe, and that his wife and wife's sister had already purchased some of them. While the negotiations were pending, another person in the presence of Washburn bought some of the notes.

Washburn bought the notes in good faith, believing they were exceptionally good and safe and that the purchase was for the benefit of his ward. He made no inquiry of Bingham as to his, Bingham's, interest in the notes. He knew that Barton was maker of the notes, but made no inquiry of Bingham or others as to his financial reponsibility. He knew that the notes purported to be secured by mortgage of land in Indiana, but made no inquiry of Bingham or others as to its value. He made no inquiry of Bingham, nor of any one else, as to the credit and responsibility of the Continental Life Insurance Company, and was not aware that its credit or solvency had been called in question.

Upon the principal fact, of the exercise of ordinary and reasonable prudence and discretion, the State Referee made a conditional finding as follows : —

" If the court shall find that it was not the legal duty of the defendant Washburn, as conservator, under the circumstances herein found, to make further inquiry of other persons than Bingham relative to the securities for the investment,

then I find that in making the investment in the notes in question, he exercised in behalf of his ward ordinary and reasonable prudence and discretion, and is not liable in this action. But if the court shall hold that it was the legal duty of said conservator, under the circumstances, to make inquiry of other and disinterested persons relative to the safety of the proposed investment, then I, find that ordinary diligence in making inquiry of disinterested persons would have elicited information sufficient to deter a person of ordinary prudence and discretion from making the investment; and in such case I find that said conservator did not use ordinary and reasonable care and discretion in making said investment, and is therefore liable in this action."

The referee also submits, as a question of law, the rule of damages to be applied to this case; "also the question of the amount of damages to be computed from the data contained herein." The report does not find the amount of money invested in the Barton notes; nor the dates when the money was withdrawn from the savings banks for the purchase of the same.

The report states that the defendant offered evidence to prove that at the same time, but not in the presence of Washburn, other men of the neighborhood, of ordinary prudence and discretion in financial matters, purchased some of the same Barton bonds as an investment for themselves; that the evidence was received by agreement, subject to exception and the opinion of the court; and that the evidence proved the facts to be as offered to be proved by the defendant, if the court should be of opinion it was admissible.

*Charles E. Perkins* and *Elliot B. Sumner*, for the plaintiff.

Evidence to prove that men of ordinary prudence bought similar notes of Bingham about the same time, was clearly inadmissible. The duty of the conservator was not performed by merely telling Bingham he wanted a sound security, and taking anything he offered him without inquiry, and with no reason for changing the safe investment then existing. *De-Wolf* v. *Sprague Co.*, 49 Conn., 282; *Clark* v. *Beers*, 61

id., 87. If the investment is perfectly safe, and the trustee for no good reason changes it to another where it is lost, he becomes responsible. 1 Perry on Trusts, § 466 ; Hill on Trustees, s. p. 382 ; 3 Lewin on Trusts, 324. *Kellaway* v. *Johnson,* 5 Beav., 319. Moreover, the conservator was guilty of great negligence in making this change of investment. *Ormiston* v. *Olcott,* 84 N. Y., 339 ; *King* v. *Talbot,* 40 id., 90 ; *Hun* v. *Cary et al.,* 82 id., 65 ; *Rae* v. *Meek,* L. R. 14 Ch. 558 ; *Budge* v. *Gummow,* L. R. 7 Ch. 721.; *Brown* v. *French,* 125 Mass., 410 ; *Tuttle* v. *Gilmore,* 36 N. J. Eq., 617 ; *Bowker* v. *Pierce,* 130 id., 262. The plaintiff claims the right to reject this unauthorized and improper change of investment, and that the conservator should account for the moneys he received as if they had remained where they were when he improperly removed them. *King* v. *Talbot,* 40 N. Y., 76, 90 ; 1 Perry on Trusts, §§ 466, 472 ; *Dickinson's Appeal,* 152 Mass., 184 ; Hill on Trustees, s. p. 381 ; *Harding* v. *Larned,* 4 Allen, 426.

*John L. Hunter,* for the defendants.

Washburn was under no statutory obligation in relation to this investment. *Clark* v. *Beers,* 61 Conn., 87 ; *Harvard College* v. *Amory,* 9 Pick., 446 ; Perry on Trusts (4th ed.), § 452 ; 2 Amer. & Eng. Ency. of Law, 827, 831, 842 ; *Lovell* v. *Minott,* 20 Pick., 116 ; *Kinmonth* v. *Brigham,* 5 Allen, 270 ; *Clark* v. *Garfield,* 8 id., 427 : *Brown* v. *French.,* 125 Mass., 410 ; *Bowker* v. *Pierce,* 130 id., 262 ; *Hunt, Appellant,* 141 id., 518 ; *Lamar* v. *Micou,* 112 U. S., 465 ; *Fahnestock's Appeal,* 104 Pa. St., 46. It may not be difficult now to see that the investment which he made was not a wise one ; "but in judging his acts we should put ourselves in his position at the time."* *Bowker* v. *Pierce et al.,* 130 Mass., 264 ; *Purdy* v. *Lynch,* 145 N. Y., 475 ; *Ormiston* v. *Olcott,* 84 N. Y., 347. The evidence that others bought these securities was clearly admissible for the purpose for which it was offered, and it was the most satisfactory evidence which could be offered for that purpose. As to damages, the plaintiff cannot ask anything more of a man who has confessedly acted in good

faith, and for what he believed the best interest of the plaintiff, than what he, the plaintiff, has actually lost by the change of investment.

HAMERSLEY, J. The State Referee finds that the defendant did not use ordinary and reasonable care and discretion in the purchase of the Barton bonds, if it was " the legal duty of the defendant Washburn, as conservator, under the circumstances herein found, to make further inquiry of other persons than Bingham (from whom the purchase was made), relative to the securities for the investment."

There is no rule of law prescribing the sources of information a trustee must exhaust before investing his trust funds; it is possible his legal duty may be performed by inquiring of a single person, even if that person is the vendor in the contemplated purchase. The finding of the referee is not contingent on this plain proposition, but upon the legal duty of the defendant to make further inquiry " under the circumstances found." It appears that no inquiry was made of Bingham, the vendor, except the general inquiry for a perfectly safe investment; so that the real contingency on which the finding is made, is whether, under the circumstances found, the law authorized the conservator to invest the funds of his ward in sole reliance on the general opinion given by the vendor, in whose integrity and good judgment in financial matters the conservator had confidence and had reasonable ground for confidence; or, to state the question a little differently, whether it was the legal duty of the conservator, before investing his ward's money in promissory notes secured by mortgage of land in another State and guaranteed by a corporation, to use, in the absence of adequate personal knowledge, ordinary diligence in making some specific inquiries of some one in respect to the pecuniary responsibility of the maker of the notes, the value of the land mortgaged to secure them, and the credit and responsibility of the corporation which guaranteed them.

There can be but one answer to this question. The contemplated investment was not one recognized by either

statute or common law as belonging to the class of invest-ments generally appropriate for trust funds. In view of the inherent objections to such investments, of the familiar rules of equity which regard them with distrust, and of the care-ful exclusion of such mortgages from the broad range of per-missible trust investments mentioned in the General Statutes (§ 495), we think that loans on promissory notes secured by mortgage of land in other States, and the purchase of such notes, cannot be regarded as *prima facie* a proper investment of trust funds; and that a trustee must justify such use of his funds by proof not only of good faith, but of due diligence on his part in ascertaining the safety of the particular invest-ment. *Clark* v. *Beers*, 61 Conn., 87, 89; *Mattocks* v. *Moul-ton*, 84 Me., 545; *Dickinson, Appellant*, 152 Mass., 184.

The referee finds that the only precaution taken by Wash-burn was to ask Bingham, who offered to sell him the secu-rities, if they were perfectly safe. He made no specific inquiries of Bingham, and no inquiries of any one else. It does not appear that he had any personal knowledge of the securities on which he could base his own judgment. The burden was on him to prove such knowledge, and the referee does not find it; on the contrary, the finding that Washburn knew the notes were made by Barton and purported to be secured by mortgage of land in Indiana, and was not aware that the credit of the insurance company had been called in question, but made no inquiry of any one as to responsibility, value or credit,—is, in effect, a finding that Washburn had no personal knowledge which could justify his action. The fact that he was willing to risk his own money in the pur-chase of such securities from Bingham on his bald assertion that they were perfectly safe, and the knowledge that his neighbors, prudent or otherwise, invested their own money in the same way, did not justify him in so risking trust funds, without the use of any diligence in ascertaining the partic-ular facts necessary to the exercise of that sound discretion which the law demanded of him.

The referee also finds that when Washburn received as conservator the estate of his ward, the funds in question

were invested in savings banks in this State believed to be safe and sound, and that without an order of the Court of Probate he changed this investment, and failed to prove any cause for such change. The powers, rights and duties of a conservator, are such only as are to be found in the statute. *Norton* v. *Strong*, 1 Conn., 65, 70. Formerly the statute authorized a conservator " to take care of and oversee such idiots, etc., . . . and their estates for their support "; and it was held that a conservator had not power to lease the real estate of his ward; that it was the intent of the legislature " to procure an income from the use of the idiot's estate, by its superintendency and oversight; and this trust was to be committed exclusively to the conservator. His power was wholly confined within these boundaries." *Treat* v. *Peck*, 5 Conn., 280, 285. In subsequent Revisions this language has been changed, and as now expressed the conservator " shall manage all such estate and apply so much of the net income thereof as may be required, and, if necessary, any part of the principal of the estate, to support him and his family, and to pay his debts, and may sue for and collect all debts due to him." General Statutes, § 478. In *Palmer* v. *Cheseboro*, 55 Conn., 114, 115, it was held that the words " to manage " such " estate," enlarged the power given by the words " to take care of and oversee " such estate, sufficiently to authorize the conservator to lease his ward's land for a reasonable time. The statute (§ 479), authorizes the Court of Probate on finding reasonable cause, to order a sale of the real estate of the ward; and makes it the duty of the conservator to invest " such part of the avails of the estate sold as may not be required for the immediate support of such incapable person or the payment of his debts, in other real estate, to be conveyed to such incapable person, or to invest the same as trust funds may be lawfully invested." A conservator may keep his ward's estate invested in the securities received by him, unless otherwise ordered by the Court of Probate, and be exempt from any liability by reason of depreciation of such securities. General Statutes, § 496.

State *v.* Washburn et al.

We think the general rule of equity which warns a trustee not to sell without sufficient reason the trust fund received by him standing on proper security, applies with peculiar force to a conservator who receives the estate of his ward safely invested in a manner expressly authorized by statute. If under such circumstances, without an order of the Court of Probate, he makes a change of investment, the burden is on him, in an action on his bond, to prove a reasonable cause for the change ; and unless he proves such cause, he may be held liable.

As the report of the referee shows that the defendant received as conservator the estate of his ward safely invested in a manner expressly authorized by statute, that he changed this investment without an order of the Court of Probate and without any cause, for one comparatively worthless, which was *prima facie* a questionable investment for trust funds, and that he exercised no diligence in ascertaining the facts he ought to know before making such investment, —the liability of the defendant in this action is the necessary legal conclusion from the facts found. And the good faith of the defendant, in such management of his ward's estate, cannot relieve him from this liability.

As to the rule of damages : The right of a *cestui que trust* to reject an unauthorized investment, is well settled. The plaintiff claims that right. The damages therefore should cover the amount withdrawn from the savings banks and invested in the Barton bonds, and a sum equal to the intervening dividends, *i. e.*, interest at the rate of four per cent, less any interest on the Barton bonds the defendant may have received and used for the benefit of his ward. The claim that interest should be computed with annual rests, cannot be sustained. There must be a gross breach of trust, to justify compounding interest. It is found that the defendant acted in good faith.

The evidence received subject to objection was plainly immaterial, if not irrelevant.

The report of the referee is incomplete in not finding the amount of damages, and the case should be recommitted in

order that such fact may be found, unless the parties shall agree upon the amount without a recommittal.

The Superior Court is advised: To recommit the case in order that the State Referee may find the amount of money drawn by Washburn from the savings banks and invested in the Barton bonds; the amount of interest thereon at four per cent from the date of such withdrawal; and the amount of interest on the Barton bonds received by Washburn and used for the benefit of his ward; unless these amounts shall be agreed upon by the parties. And upon these facts being established, either by the report of the referee or by the stipulation of the parties, to render judgment for the plaintiff for a sum equal to the money drawn by the defendant Washburn from the savings banks and invested in the Barton bonds, with interest at the rate of four per centum, less the amount of interest on the Barton bonds received by said Washburn and used for the benefit of his ward.

In this opinion the other judges concurred.