Carrie McDOUGALD et al., Plaintiffs,

Miguel Sosa, on behalf of himself and all others similarly situated, Intervening Plaintiff,

v.

Nicholas NORTON et al., Defendants.

Civ. A. No. B–607.

United States District Court,
D. Connecticut.

June 29, 1973.

Theodore I. Koskoff, Bridgeport, Conn., for plaintiffs.

Roger J. Frechette, New Haven, Conn., for defendant Daniel Dunn.

Francis J. MacGregor, Asst. Atty. Gen., Hartford, Conn., for defendants Henry C. White and Herbert Barrell.

Before ANDERSON, Circuit Judge, BLUMENFELD, Chief District Judge, NEWMAN, District Judge.

### MEMORANDUM OF DECISION
### FINDINGS OF FACT AND
### CONCLUSIONS OF LAW

ROBERT P. ANDERSON, Circuit Judge:

On February 13, 1969, plaintiff Carrie McDougald was injured in the course of her employment with the Audio Tape Corporation of Glenbrook, Connecticut. Soon thereafter she filed a claim against her employer under the Connecticut Workmen's Compensation Act, C.G.S. § 31–275 et seq. In March 1970; as a result of this accident, Mrs. McDougald became unable to work and applied for and received Aid to the Disabled from the State of Connecticut pursuant to C. G.S. § 17–111. In May 1970 she was asked to execute an assignment of her workmen's compensation claim to the State of Connecticut to the extent of the public assistance she would receive, and she did so. This assignment was presented to her attorney pursuant to C.G.S. § 17–83f,[1] and constituted "an ir-

---

1. C.G.S. § 17–83e provides, in relevant part:

"If a beneficiary of aid under this chapter acquires property of any kind or interest in any property, estate or claim of any kind, the State of Con- necticut shall have a claim, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid to him or in his behalf . . . .."

revocable direction to the attorney to pay the commissioner of finance and control in accordance with its terms." Even in the absence of such assignment, this section gives the State a lien against all causes of action belonging to a public assistance beneficiary.

In January 1972, Mrs. McDougald was found eligible for Federal Disability Insurance Benefits (Social Security) under 42 U.S.C. § 401 et seq. She received a lump sum retroactive payment of $1,237.50, and has since then received a monthly payment of $124.00. Her state public assistance benefits were terminated at that time. More recently, Mrs. McDougald received a $20,000 lump sum payment in full satisfaction of her accident claim against her former employer. The Connecticut State Welfare Department has demanded that she reimburse it for the public assistance she received, which by the Department's computation amounted to a total of $3,947.96.

In October 1972, Mrs. McDougald and Richard Bieder, her attorney for the workmen's compensation claim, brought this suit to enjoin the State from taking any action under C.G.S. §§ 17–83e and 17–83f to secure reimbursement for the public assistance benefits it paid to Mrs. McDougald from her Social Security [2] payments or workmen's compensation award and to impose liability on Attorney Bieder for any claimed dereliction of his duty under the statute. Because plaintiffs claimed that reimbursement from these sources would be unconstitutional, a three-judge district court was impaneled to hear this case, 28 U.S.C. §§ 2281, 2284.

Plaintiff McDougald seeks to have this declared a class action pursuant to Rule 23(a) and (b), F.R.Civ.P., and advances an extremely broad definition of the class she claims to represent in order to encompass all public assistance beneficiaries of the State of Connecticut

---

C.G.S. § 17–83f provides:
"In the case of causes of action of beneficiaries of aid under this chapter, the claim of the state shall be a lien against the proceeds therefrom for repayment under section 17–83e, and shall have priority over all other claims except attorney's fees for said causes, expenses of suit, cost of hospitalization connected with the cause of action by whomever paid over and above hospital insurance or other such benefits, and, for such period of hospitalization as was not paid for by the state, physicians' fees for services during any such period as are connected with the cause of action over and above medical insurance or other such benefits; and such claim shall consist of the total assistance repayment for which claim may be made under the provisions of this chapter. The proceeds of such causes of action shall be assignable to the state for payment of the amount due under said section 17–83e, irrespective of any other provision of law. Upon presentation to the attorney for the beneficiary of an assignment of such proceeds executed by the beneficiary or his conservator or guardian, such assignment shall constitute an irrevocable direction to the attorney to pay the commissioner of finance and control in accordance with its terms."

2. At the opening of the hearing of this case on May 29, 1973, and, after discussion with counsel about the effect of Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (which held that a state may not seek recoupment of public assistance from Social Security payments because of 42 U.S.C. § 407 and the Supremacy Clause) on the efforts of the State of Connecticut to seek reimbursement for public assistance out of Social Security payments, the defendants conceded that they could not, as to any of the plaintiffs, seek and obtain such reimbursement out of Social Security payments. By oral stipulation this portion of the plaintiff McDougald's case, in reliance upon the concession by the appropriate State officials, was withdrawn, leaving for hearing and adjudication only her petition for an injunction against the State's claimed right and power to procure reimbursement of the public assistance given Mrs. McDougald from her workmen's compensation recovery. Likewise, as the petition by the plaintiff Charles Grice was based solely upon the legal steps taken by the defendant Daniel Dunn, as Director of Welfare of the City of New Haven, to gain reimbursement for welfare payments from Grice's Social Security payments, his complaint was withdrawn by stipulation for the same reasons. These withdrawals were approved and so ordered.

who are receiving workmen's compensation against which the State is now asserting a claim for reimbursement *and also* those who, in response to the State's demand, have already paid it. As Mrs. McDougald is not actually a member of the class of persons who have made restitution, her attorneys have submitted a motion to intervene in this action on behalf of Miguel Sosa, a former recipient of Connecticut public assistance who subsequently reimbursed the State for this aid from his Social Security benefits.

■■ It is the opinion of the court that Mrs. McDougald and Mr. Sosa represent different classes of people with different legal positions and interests, and should be treated accordingly. The former presents the clear and important question of whether the State may seek to recoup its public assistance payments from a beneficiary's subsequently received workmen's compensation award. The Sosa complaint, on the other hand, raises the substantial but unrelated issues of the retroactivity of our decision on Mrs. McDougald's claim and the notice necessary under Rule 23 in a class action for damages. *See* Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, reh'g en banc denied, 479 F.2d 1005 (2 Cir. 1973). The motion to intervene is therefore denied, and the class which Mrs. McDougald will be permitted to represent is restricted to those persons whose workmen's compensation awards are presently being pursued by the Connecticut State Welfare Department for reimbursement of previous public assistance payments.

■ C.G.S. § 31–320 provides that, "All sums due for [workmen's] compensation . . . shall be exempt from attachment and execution and shall be nonassignable before and after award." But C.G.S. § 17–83f makes assignment of all causes of action possessed by public assistance beneficiaries to the State valid, "irrespective of any other provision of law." Plaintiff contends that the denial of the protection of § 31–320 to former public assistance beneficiaries is a denial of equal protection.

The first step in considering this argument is to determine the appropriate constitutional standard of evaluation. There is no "fundamental right" involved which would mandate strict scrutiny of the different treatment of public assistance beneficiaries. Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L. Ed.2d 231 (1971); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L. Ed.2d 491 (1970); Boraas v. The Village of Belle Terre, 476 F.2d 806 (dicta), reh'g en banc denied, 476 F.2d 824 (2 Cir. 1973). This leaves the choice of applying either " 'traditional' equal protection analysis," requiring only a showing that the classification has a rational basis, Frontiero v. Richardson, 411 U.S. 677, at 683, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), or the more elastic and therefore stricter standard which the Second Circuit has been employing recently, *see* Aguayo v. Richardson, 473 F.2d 1090, 1094, 1095 (1973); City of New York v. Richardson, 473 F.2d 923, 930, 931 (1973); Green v. Waterford Board of Education, 473 F.2d 629, 632–634 (1973); *Boraas, supra,* 476 F.2d at 814, 815; Demiragh v. DeVos, 476 F.2d 403, 405, 406 (1973); Doe v. Hodgson, 478 F.2d 537, (1973). But even assuming that this Second Circuit standard may reasonably be held to have survived *Frontiero, supra,* and San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973),[3] which must be applied, C.G.S. §§ 83e and 83f do not suffer any constitutional infirmity because, after consideration "of the nature of the unequal classification under attack, the nature of the rights adversely affected, and the governmental interest urged in support of it," these statutes "have a substantial

3. It appears that at the present time a majority of the Supreme Court has resolved the issue, most sharply brought into focus in *Boraas, supra,* concerning the standard to be applied, more nearly in line with Judge Timber's dissenting opinion in the *Boraas* case.

relationship to a lawful objective." *Boraas, supra*, 476 F.2d at 814.

Under this standard, the constitutionality of the denial of the protection of C.G.S. § 31–320 to public assistance beneficiaries should be determined through consideration of the purposes of both the public assistance and workmen's compensation programs. Public assistance is designed to provide individuals with the fundamental necessities of life when for various reasons they are unable to work or otherwise support themselves. A workmen's compensation award covers lost wages, medical expenses and other losses relating to an injury, arising out of and in the course of the employment from the date of its occurrence. If a person receives public assistance for support and medical care, pending the negotiation or adjudication of his workmen's compensation claim for which he subsequently receives an award, he receives double compensation for the period between the accident and payment of the award. In view of the severe shortage of public assistance funds and the ever mounting demands on them, there is certainly a bona fide governmental interest in recouping such funds from persons who subsequently receive funds from other sources. *See* New York State Dept. of Social Serv. v. Dublino, —— U.S. ——, ——, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

Analyzing the problem from the perspective of the purpose of § 31–320 leads to a similar conclusion of lawfulness and rationality. Workmen's compensation claims are protected from attachment, execution and assignment to preclude the possibility that an injured person, who has no means of supporting himself and his dependents in the difficult period between his accident and the payment of his award, will make a distress assignment in advance of his award for less than its fair value, or that he would be forced by private creditors to become a ward of the State. This statute acts to conserve public assistance funds by lessening the likelihood that an injured person will become dependent upon the State because of his desperation or because of his previous private debts. These considerations are, however, inapplicable when the State is the creditor because of prior public assistance grants. First, there is no possibility that the workmen's compensation award will be transferred for less than its fair value because the State can only recover the amounts actually advanced, without interest. Also, the hazard of future dependency on public assistance is increased only to the extent of the individual's prior dependency, thus resulting in a net decrease (after discounting the possible future payments to their present value) in the drain on available public assistance funds. Nor is the State's treatment of itself, differently from other creditors, constitutionally impermissible, for, unlike other creditors, its status as such is statutorily compelled.[4]

Thus, the overriding of § 31–320 by § 17–83f neatly complies with the overall schemes of both public assistance and workmen's compensation, without violating any inherent constitutional right of the public assistance-workmen's compensation beneficiary.

Judgment will therefore be entered for the defendants on this issue.

---

4. Plaintiffs urge us to interpret James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972) as holding that the state as a creditor has no special interest which entitles it to reach property which is otherwise exempt from the claims of creditors. But the Court there held only that a state may not impose "unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor," and specifically recognized that a state's claim "may take precedence, under appropriate circumstances, over the claims of private creditors and that enforcement procedures with respect to judgments need not be identical." 407 U.S. at 138, 92 S.Ct. at 2033. In view of our conclusion that the denial of the protection of § 31–320 to public assistance beneficiaries is consonant with the purposes of both public assistance and workmen's compensation, we do not believe it is "*unduly* harsh or discriminatory."