Robert A. McAULIFFE

v.

Adolf G. CARLSON, Commissioner of Finance and Control of the State of Connecticut.

Civ. No. 15687.

United States District Court, D. Connecticut.

Jan. 16, 1975.

Michael J. Churgin, Stephen Wizner, New Haven, Conn., for plaintiff.

Maurice Myrun, Asst. Atty. Gen., East Hartford, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR SUPPLEMENTAL RELIEF

NEWMAN, District Judge.

Plaintiff's motion for supplemental relief presents in an unusual context questions concerning waiver of Eleventh Amendment protection. In the first stage of this litigation, brought pursuant to 42 U.S.C. § 1983, this Court granted plaintiff's motion for summary

judgment and entered an order declaring unconstitutional Conn.Gen.Stat. §§ 17–318 and 4–68g, McAuliffe v. Carlson, 377 F.Supp. 896 (D.Conn.1974) (*McAuliffe I*). Under the authority of these statutes defendant, Connecticut's Commissioner of Finance and Control, had taken two sets of funds belonging to plaintiff, and had applied the money to reimburse the State for expenses incurred in providing care for plaintiff at two State mental health facilities.

The first sum of money taken by defendant was $1,098.07 in disability benefits due plaintiff under Title II of the Social Security Act. Plaintiff had been transferred to the Security Treatment Center, Middletown, from the Hartford Community Correctional Center, and § 17–318 made all such transferees liable for the costs of their "hospitalization." To enforce this liability against plaintiff, defendant applied, under the authority conferred on him by Conn.Gen. Stat. § 4–68c,[1] to the Secretary of Health, Education and Welfare, who authorized defendant to receive plaintiff's social security benefits as "representative payee," 42 U.S.C. § 405(j), 20 C.F. R. § 404.1601, and to expend those funds for plaintiff's use and benefit.

Plaintiff himself never had control over or possession of these funds. They were sent directly to defendant as representative payee, and he, in effect, transferred them to himself as Commissioner of Finance and Control and billing agent for the State of Connecticut. *McAuliffe I* held the statute making plaintiff liable for his hospital costs unconstitutional as a denial of equal protection; this use of plaintiff's funds was therefore unlawful.

The second sum was $150 over which plaintiff did initially have control. After being transferred from the Security Treatment Center to Norwich Hospital, plaintiff had begun receiving his own social security benefits pursuant to the Secretary's decision to remove the Commissioner as representative payee. Plaintiff had deposited his disability benefits in a patient's account at the hospital, expecting to draw on the account for his personal needs. Section 4–68g authorized defendant automatically to act as plaintiff's conservator. Defendant assumed this position for the purpose of paying the balance in plaintiff's account to himself, again as billing agent for the State, to cover plaintiff's hospital bill. Though plaintiff's obligation to pay these costs was entirely lawful, *McAuliffe I* held that defendant's automatic "appointment" as conservator violated due process requirements; defendant's acquisition of the $150 was therefore unlawful.

Plaintiff's complaint sought, in addition to declaratory relief, an order that the State return plaintiff's funds. *McAuliffe I* deferred such a ruling, and indicated that if the State failed to return the funds in response to the declaratory judgment, plaintiff could move for supplemental relief, at which time the Court would be confronted with the issue of sovereign immunity, 377 F.Supp. at 906, n. 13. The State declined to return the money, and the present motion for an order directing the return, and for attorneys' fees and costs, followed. Defendant has responded to the motion by urging that this Court is without jurisdiction. He argues that he is sued in his official capacity, that the State has not consented to be sued, and that the claim for monetary relief is therefore barred by the Eleventh Amendment.

The initial question is whether the Eleventh Amendment, if not waived, provides protection against plaintiff's claims. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), suggests that it does. Like the claim there for retroactive welfare benefits, plaintiff's claims here will be paid

---

1. Although the statute does not provide explicitly for the Commissioner's assumption of the role of representative payee, plaintiff has alleged that this statute confers such authority, defendant has not disputed the contention, and no contrary authority has been found.

from the State treasury and are owed because of a breach of a legal duty by a State official. Plaintiff contends *Jordan,* which did not involve money taken from the claimants, should be limited to claims for *state* funds, pointing out that the money sought here belonged to the plaintiff before the defendant acquired it.

■ The argument suggests that the Eleventh Amendment does not insulate a state from claims for restitution. Such an exception would still leave a state protected from unlimited assaults on its fisc, and would therefore appear consistent with the values generally protected by the Eleventh Amendment. The Supreme Court, however, has previously held the Amendment available to bar a taxpayer's claim for a refund of his own money unlawfully collected. Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The claimant in *Ford Motor Co.* made the decision, however unwillingly, to part with his money, whereas plaintiff here had his money taken with no action on his part at all, but there is no intimation in the opinions in *Ford Motor Co.* or *Jordan* that original ownership of the claimed funds determines Eleventh Amendment protection. Once the money enters the state treasury, the Eleventh Amendment bars its return. McAuliffe may therefore recover only· if the State has waived the Amendment's protection · and consented to McAuliffe's suit.

■ Prior decisions on Eleventh Amendment waiver offer little guidance. If the defendant's liability arose from activity outside the normal sphere of governmental operations, waiver could be found. See Parden v. Terminal R. Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L. Ed.2d 233 (1964). However, neither maintaining mental health facilities, *cf.* Dawkins v. Craig, 483 F.2d 1191 (4th Cir. 1973); Rothstein v. Wyman, 467 F.2d 226 (2d Cir. 1972), nor seeking reimbursement from patients for the services provided in such facilities, is so far beyond usual state activities as to remove Eleventh Amendment protections.[2] But an issue of waiver nevertheless remains because of the particular means by which the State authorized the Commissioner to seek reimbursement for hospitalization expenses.[3] With respect to each set of funds the question presented is whether the statute authorizing the Commissioner's assumption of a fiduciary role states with sufficient clarity that the Commissioner will have the same exposure to suit as would a private citizen serving in the same role. See Edelman v. Jordan, *supra,* 415 U.S. at 673, 94 S.Ct. 1347.

With respect to the funds taken by defendant as representative payee, the legislature provided explicitly for the Commissioner to perform his fiduciary duties with precisely the same powers and *obligations* as any other fiduciary. Conn.Gen.Stat. § 4–68b creates the office of Estate Administrator, whose occupant serves under the ·Commissioner of Finance and Control. It was as the Estate Administrator that the Commissioner became representative payee, see n. 1, *supra.* Section 4–68c empowers one holding the office of Estate Administrator to act, *inter alia,* in any fiduci-

---

2. Though the State undoubtedly performs a traditional function in seeking to collect funds owing to it, there is room for doubt whether the means used here are sufficiently within normal State activity to preserve Eleventh Amendment protection. Having a state official act as representative payee and as conservator for one alleged to owe funds may be valid techniques for collecting money, but they are somewhat unusual. Decision need not rest on this distinction, however, in view of the way the State employed these techniques.

3. The situation would have been entirely different if, for example, a relative of plaintiff had served as representative payee and as conservator. If the State had collected from such a private fiduciary, the Eleventh Amendment would clearly have barred plaintiff's claims, even if the obligation to pay was later declared to be without legal foundation or if there was a defect in the procedure for designating the fiduciary.

ary capacity "under . . . any instrumentality . . . of the United States qualified to appoint fiduciaries . . . ." The statute grants the Administrator all "the same rights and powers" of other fiduciaries, and subjects him to *"the same duties and obligations as are possessed by and imposed upon* guardians, conservators, administrators and *other fiduciaries . . . ."* (Emphasis added.) The Department of Health, Education and Welfare is without doubt an instrumentality of the United States qualified to appoint fiduciaries, and a representative payee clearly is such a fiduciary, see 20 C.F.R. § 404.1601 et seq.

The conclusion is the same with respect to the statute authorizing the Commissioner's service as conservator. Conn.Gen.Stat. § 4–68g empowers the Commissioner, as statutory conservator, to "hold or use such property or funds for the support and benefit of such person *in the same manner as a duly appointed conservator . . . ."* [4] (Emphasis added.)

Each statute describes the roles available to the Commissioner by reference to traditional fiduciary relationships with clearly defined sets of powers and duties. Each statute must thus be taken to reflect not only an intent to allow the Commissioner to serve effectively as the State's bill collector, but also a carefully expressed concern that the Commissioner do so with strict regard for the usual legal rights of persons in plaintiff's circumstances. When the legislature authorized the Commissioner to become a *conservator*, it took into account all the content that centuries of judicial construction have added to that title. Similarly, although the term "representative payee" does not appear in § 4–68c, the references in earlier portions of that statute to specific fiduciary roles make plain that the Commissioner is to perform the functions of a particular office

and not merely receive checks for the benefit of the State.

Neither statute states in terms that the Commissioner *qua* fiduciary is subject to suit, but such language is for the foregoing reasons, if not superfluous, certainly unnecessary. Each statute involved here very clearly imposes on the Commissioner the obligations normally associated with the offices he is empowered to assume. Such careful specification of obligations would be meaningless unless the legislature had contemplated that the normal means for enforcing such obligations would be available. The inference is thus inescapable that the Connecticut General Assembly has consented to suits against the Commissioner of Finance and Control to enforce fiduciary obligations assumed by him when he acts pursuant to the authority of Conn.Gen.Stat. §§ 4–68c and 4–68g.

There remains for consideration the liability of a fiduciary for the actions taken by the defendant. That liability is clear as to the $1,098.07 used to pay the obligation unconstitutionally created by § 17–318. By consenting for his ward to payments not constitutionally required, the Commissioner violated his fiduciary duties. When a fiduciary receives funds to be used for the benefit of his ward, he becomes debtor to the ward for that amount, *cf.*, Lawrence v. Security Co., 56 Conn. 423, 441, 15 A. 406 (1888), and he relieves himself of that obligation only by making payments to or for the benefit of the ward. *Ibid.* An improper payment does not affect the debtor-creditor relationship thus established, but rather becomes the personal obligation of the fiduciary. Elmendorf v. Poprocki, 155 Conn. 115, 120, 230 A.2d 1 (1967); Lawrence v. Security Co., *supra*; Brown v. Eggleston, 53 Conn. 110, 116–117, 2 A. 321 (1885).

Among the duties imposed on Connecticut fiduciaries is the protection

4. Neither statute involved here raises the question whether a consent to suit permits such suits to be brought only in state courts, or in both federal and state courts. *Compare, e.g.*, Ford Motor Co. v. Dept. of Trea-

sury, *supra*; Medicenters of America, Inc. v. Commonwealth of Va., 373 F.Supp. 305 (E. D.Va.1974), *with* Flores v. Norton & Ramsey Lines, Inc., 352 F.Supp. 150 (W.D.Tex. 1972).

of the ward's assets from unjust and illegal claims. Winchell v. Sanger, 73 Conn. 399, 47 A. 706 (1900); Clement's Appeal from Probate, 49 Conn. 519 (1882). A fiduciary who makes an improper payment is accountable to his ward for the sum so disbursed, Elmendorf v. Poprocki, *supra*; Dettenborn v. Hartford National Bank & Trust Co., 121 Conn. 388, 185 A. 82 (1936); Brown v. Eggleston, *supra,* and good faith is no defense to that liability. *Cf.* State v. Washburn, 67 Conn. 187, 34 A. 1034 (1896); Stempel v. Middletown Trust Co., 7 Conn.Supp. 205 (Super. Ct.Htfd.Cty.1939), remanded on other grounds, 127 Conn. 206, 15 A.2d 305 (1940). If restitution is not made voluntarily, it may be ordered by a court. *Ibid.*

Defendant's breach of duty also involves a second element. The funds were taken not only in payment of an obligation unconstitutionally imposed, but also for the benefit of the fiduciary and the fiduciary's employer. See Clement's Appeal from Probate, *supra*; Holbrook v. Brooks, 33 Conn. 347 (1866). Under all the circumstances, the breach of trust is patent, and restitution is a particularly appropriate remedy.

The appropriateness of surcharging the Commissioner for his acts as conservator in using the $150 of social security payments is somewhat less obvious. Although the Commissioner's appointment as conservator pursuant to § 4–68g was defective, the payment he made in that capacity was in response to a legitimate obligation imposed on plaintiff to reimburse the State, to the extent he was able, for the expenses of his care. It could be argued that on these facts the Connecticut courts would treat the Commissioner as a guardian de son tort, see 39 C.J.S. Guardian and Ward § 3, at p. 13, and credit him for the expenditures. See In re Gilfillen's Estate, 170 Pa. 185, 32 A. 585 (1895).

Defendant has chosen to rely solely on the Eleventh Amendment defense, however, see Fed.R.Civ.P. 12(b). He has not raised any other defense, perhaps because he has concluded that his status more closely resembles that of a creditor who would not be permitted to reach these social security funds, Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), 42 U.S.C. § 407, than it does that of a bona fide fiduciary who could appropriately apply the funds against plaintiff's obligation to the State, see 20 C.F.R. § 404.1606. See also McDougald v. Norton, 361 F.Supp. 1325, 1326 n. 2 (D.Conn.1973) (three-judge court). In any event, the Eleventh Amendment defense has failed, no other defense has been interposed, and restitution is therefore proper.

■    Plaintiff's motion for attorneys' fees stands on a different footing. The Court does have discretionary authority to award fees in a § 1983 suit, Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Commission, 497 F.2d 1113 (2d Cir. 1974), but the facts of the present case do not make such an award appropriate. Defendant's continued refusal to refund the money, even after the declaratory judgment, raised legitimate and substantial questions of Eleventh Amendment law. The refusal certainly cannot be characterized as that kind of "unreasonable, obdurate obstinacy" that justifies imposing attorneys' fees as a penalty, compare Stolberg v. Members of the Board of Trustees for the State Colleges of the State of Connecticut, 474 F.2d 485, 490 (2d Cir. 1973). Section 1983 itself provides no explicit encouragement for the award of attorneys' fees, Bridgeport Guardians, *supra,* 497 F.2d at 1115; compare Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and plaintiff's victory has not created a fund for the benefit of a class, see *id.* at 706 n. 8.

Accordingly, it is hereby ordered that judgment enter against the defendant Commissioner of Finance and Control for $1,098.07 plus $150.00, with interest at 6% from June 30, 1972, and January 19, 1973, respectively. Plaintiff's motion for attorneys' fees is denied, but he may recover his costs.