## WARD CHURCH, CONSERVATOR, *vs.* CHARLES ROSENSTEIN.

Third Judicial District, New Haven, January Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A conservator cannot, without an order of the Court of Probate, borrow money on the credit of his ward's estate with which to purchase for the ward an interest in a business.

The rights of the lender are not increased by the facts that, while he knew the relations of the parties, he was ignorant of the conservator's want of power, and that he acted in good faith. He must look to the conservator personally for repayment.

Where a guardian or other trustee improperly uses or reinvests the funds of the estate, the ward is entitled to any benefit derived from the transaction.

The final account of the conservator, duly accepted and allowed by the Court of Probate, is admissible against him for the purpose of showing whether or not the borrowed money went into the ward's estate. Such evidence, however, is not conclusive upon the conservator.

Argued January 17th—decided March 7th, 1912.

SUIT to secure the delivery and cancellation of certain orders on savings-banks given to the defendant by the plaintiff's predecessor in alleged violation of his duty as conservator, brought to and tried by the Court of Common Pleas in New Haven County, *Simpson, J.;* facts found and judgment rendered in favor of the plaintiff, and appeal by the defendant. *No error.*

*Charles S. Hamilton,* for the appellant (defendant).

*Ward Church* and *Harrison Hewitt,* for the appellee (plaintiff).

THAYER, J. The plaintiff's predecessor, Chipman, as conservator of one Minor, obtained from the de-

fendant $537.50, and executed and delivered to him four assignments purporting to convey to him sums aggregating $600, part of a larger amount of money belonging to and standing in the name of Minor in two savings-banks in New Haven. Two of the assignments were of money deposited in the National Savings Bank, the other two of money deposited in the New Haven Savings Bank. The deposit-books at the time were in a safe-deposit vault, the key of which was in the possession of Minor's brother, who was then in South America. The money, under the rules of the savings-banks, could not be withdrawn except upon presentation of the deposit-books. At the date of the last two assignments, a paper was drawn up and signed by Minor and delivered to the defendant, in which he stated that he was willing to invest $600 for a one-fourth interest in the Chipman Studio, and was willing to have Rosenstein, the defendant, advance him that sum for that business, and further stating that he agreed to pay back that amount when the key of the safe-deposit vault should be returned, and that he had assigned to the defendant $600 in the savings-banks. The Chipman Studio, in which the incompetent thus stated his willingness to become a part owner, was a photographic business belonging to his then con-servator, Chipman, and the latter, in obtaining the money from the defendant, told him he wanted it to pay some bills of the incompetent, and to purchase an interest in this photographic business.

The court in its finding speaks of this transaction as a loan; the defendant in his pleadings describes it as a loan; and it is manifest from the statement which the defendant accepted from Minor at the time the trans-action was closed, and from the circumstances attend-ing the advancement of the money, that it was a loan and was so understood by all the parties. The as-

signments were given merely as security. It was not expected that the money would be drawn by the defendant, but was known that it could not be drawn by him because the books were not assigned or delivered to him. His assignments did not cover the entire deposit in either bank. When the deposit-books were returned to Minor or his conservator, they were to pay back the money borrowed.

Chipman's duties as conservator are fixed by statute. Apart from the impropriety of attempting to sell an interest in his own business to himself as conservator, he had no authority under the statute, and without the order of the Court of Probate, to borrow money on the credit of his ward's estate with which to purchase an interest in a photographic business. The statute neither expressly nor impliedly gives him such power; and the incompetent under a conservator is legally incapable of making a contract. *Brown* v. *Eggleston,* 53 Conn. 110, 119, 2 Atl. 321.

The defendant knew the relations of the parties, and is chargeable with knowledge that the conservator had no power to bind the incompetent's estate for the money borrowed. It does not help him if in fact he did not know that the conservator had no such power, and therefore acted, as the court has found that he did, in good faith in advancing the money. It appears that the ward and his estate received no benefit from the money loaned; that the interest in the photographic business was not transferred to him. There would be no equity, therefore, in holding the ward's estate to repay it. The defendant contracted with Chipman personally, and must look to him for repayment.

The plaintiff introduced in evidence the final account of Chipman as conservator accepted and allowed by the Court of Probate. The account made no reference to the money borrowed of the defendant, or to the assign-

ments. The defendant objected to it as irrelevant, immaterial, and incompetent. It was competent for the plaintiff to show that the court had not approved the transaction between the parties. Where a guardian or other trustee improperly uses or reinvests the funds of his ward, the latter is entitled to any benefit derived from the transaction. The evidence, while not conclusive upon the defendant, was competent for the purpose of showing that the borrowed money had not gone into the ward's estate and been turned over to the plaintiff as a part of that estate with the approval of the Court of Probate. Had it been, it would be inequitable for him to retain it and also to retain the assigned deposits.

The same question raised upon the trial was presented on the demurrer and was properly decided in the same way.

There is no error.

In this opinion the other judges concurred.