Jaretzki *v.* Strong.

----

Alfred Jaretzki et al., Executors and Trustees, *vs.* Elizabeth Strong et als.

Third Judicial District, Bridgeport, October Term, 1922.
Wheeler, C. J., Curtis, Burpee, Keeler and Webb, Js.

In the thirteenth article of his will, a testator created seven separate trust funds, one of $800,000 for the benefit of the grandson bearing his own name, and six of $400,000 each, for the benefit of the other six grandchildren, all of whom survived the testator. The trustees of these several funds were directed to hold them as separate trusts, and to pay over the net income of each "for the maintenance, education and support" of the grandchild for whom that particular fund was created and held, with power to pay over to each grandchild one quarter of the principal of the trust fund so held for him or her, as he or she might respectively attain twenty-five years, one quarter at thirty years, one quarter at thirty-five years, and the balance of the fund at forty years. The will further clothed the trustees with "full and absolute power" to decline to make such payments or to reduce the amount thereof, or, "as a reward for success, conscientious work and the development of a strong character on the part of any beneficiary," to "advance the time of making such payments" by paying to such beneficiary at any of said stated periods "twice the amount hereinbefore provided—

all as in their judgment said trustees may deem for the best interest of the several beneficiaries." In a suit to construe the will it was *held:*—

1. That the trustees, during the whole period of each separate trust, were vested with discretion as to the amount of net income of that trust fund which they should expend for the maintenance, education and support of the grandchild for whose benefit that particular trust fund was created and was held by them.

2. That the trustees themselves should make such expenditure as they in their judgment might deem for the best interest of the respective beneficiaries of each fund, and not pay over the entire net income, as the property of each beneficiary, to the general guardians of the estates of the several grandchildren, as such guardians contended,—a result which would defeat the consummation of the testator's purpose.

3. That any part of the net income of any trust fund, if not expended during any period of time, should be retained by the trustees and applied by them from time to time thereafter, during the existence of that trust, at their discretion, for the maintenance, education and support of that grandchild for whose benefit that particular trust fund was created and held.

4. That at the termination of any separate trust, any part of its net income then unexpended should be paid over by the trustees to the designated beneficiary of that trust.

In some instances in his will the testator used the words "pay over," in others "pay over and apply," in connection with language expressly giving the trustees discretion in the application of an income. *Held* that these, and similar phrases, were used interchangeably and with the same meaning.

Argued October 26th, 1922—decided January 10th, 1923.

SUIT to determine the construction of article thirteenth of the will of Edmund C. Converse of Greenwich, deceased, brought to and reserved by the Superior Court in Fairfield County, *Wolfe, J.*, upon the facts alleged in the complaint and admitted in the answers, for the advice of this court.

On January 27th, 1920, Edmund C. Converse executed a will in which is this article:—

"Article Thirteenth: I give and bequeath unto my Executors, hereinafter named, whom I constitute Trustees for the purpose, the sum of Eight hundred

thousand dollars ($800,000), in trust, for the benefit of my grandson, Edmund C. Converse, 3rd, if he survive me, and the sum of Four hundred thousand dollars ($400,000), in trust, for each other grandchild of mine who shall survive me; the terms of the said several trusts are as follows:

"The Trustees shall hold the trust funds as separate trusts and shall invest the same in the manner hereinafter provided, and shall receive the income and revenue thereof and pay over the net income of said several trust funds for the maintenance, education and support of the grandchild for whom said trust fund is created and held, with power, however, to pay over out of the principal of said trust funds in the case of Edmund C. Converse, 3rd, the sum of Two hundred thousand dollars ($200,000) to him upon his attaining the age of twenty-five years, and the further sum of Two hundred thousand dollars ($200,000) upon his attaining the age of thirty years, and the further sum of Two hundred thousand dollars ($200,000) upon his attaining the age of thirty-five years, and the balance upon his attaining the age of forty years, and with respect to each of the other grandchildren to pay over the sum of One hundred thousand dollars ($100,000) to such child upon his or her attaining the age of twenty-five years, another one hundred thousand dollars ($100,000) upon attaining the age of thirty years, another one hundred thousand dollars ($100,000) upon attaining the age of thirty-five years and another one hundred thousand dollars ($100,000) upon attaining the age of forty years, such distribution to be made in each case either in cash or securities, as the said Trustees shall deem proper, and with full and absolute power to the said Trustees to decline to make such payments or to reduce the amount thereof in any and all cases, or as a reward for success, conscientious work and the development of

a strong character on the part of any beneficiar , to advance the tim  of making such payment  by paying to such beneficiary at any of said stated periods, twice the amount hereinbefore provided to be paid at such time,—all as in their judgment said trustees may deem for the best interest of the several beneficiaries.   Upon the death of each grandchild the principal of any fund that may be held for the benefit of such grandchild and undistributed, shall then be distributed by the Trustees in such manner as may be directed by the Last Will and Testament of said beneficiary, duly admitted to probate, or in lieu of such last will and testament, to and amongst the next-of-kin of such beneficiary."

At the time when he prepared and published this will, Edmund C. Converse had seven grandchildren.   Of these the grandson Edmund C. Converse, 3rd, named in the above article, was then fifteen years old, and of the others the oldest was then eighteen years of age and the youngest eight.

At that time, the defendant Judith A. Salisbury was the wife of the testator's son Edmund C. Converse, Jr., and they were the parents of Edmund C. Converse, 3rd, and of a younger child named Roger Converse.   In his will Edmund C. Converse gave to her the sum of $100,-000 absolutely, and made her a beneficiary of a trust fund of one million dollars.   She was afterward divorced from the testator's son, and in the decree the custody of these children was given to her.   She has since re-married.   On March 29th, 1921, Edmund C. Converse executed a codicil to his will in which he revoked these provisions for his son's former wife, but he did not thereby directly affect any other provisions.   He died April 4th, 1921, leaving all his grandchildren surviving.

On July 18th, 1921, Mrs. Salisbury was appointed guardian of her two children by the Supreme Court of

Jaretzki *v*. Strong.

California, and the amount of her bond was fixed at
$1,000. She now lives in San Francisco, and contends
that the entire income of the trust funds created for the
benefit of these children by article thirteenth of the
will is their property, and demands that the trustees
pay over such entire income to her as general guardian
of their estates. She is supported in her contention
by the guardian *ad litem* of these grandchildren. The
other five grandchildren, through their guardian *ad
litem*, present opposing claims.

Thereupon the following questions have arisen con-
cerning the payment of the income of these trust funds
and the construction of article thirteenth of the will:—

"First: Whether by said Article Thirteenth a dis-
cretion is vested in the Trustees either during the
minority of the respective grandchildren or during the
whole period of the respective trusts as to the amount
of income to be expended for the maintenance, edu-
cation and support of the respective grandchildren?

"a. If there be such discretion, should the Trustees
themselves during the minority of any such grandchild
expend the amount of income deemed proper by the
Trustees or should they pay it over to the guardian of
the estate of such grandchild for such purposes?

"b. If any part of the income of any such trust fund
is not so expended during any year, how is such sur-
plus to be handled by the Trustees? Shall they retain
it and apply it in their discretion from time to time dur-
ing the period of the trust for the maintenance, educa-
tion and support of the grandchild who is the beneficiary
of the trust, or, if not, when and to whom shall such
surplus be paid?

"Second: If there is no discretion vested in the Trus-
tees as to the amount of income to be expended for the
maintenance, education and support of said grandchil-
dren, to whom is such income to be paid and under

whose direction is it to be expended, and by whom shall any surplus be accumulated, and to whom and when shall such surplus be paid?"

These are the questions reserved for the advice of this court.

*Charles D. Lockwood,* and *Ralph Royall* of New York City, for the plaintiffs.

*John F. Keating,* for the defendants Elizabeth Strong *et al.*

*Walter M. Anderson,* for the defendants Edmund C. Converse, 3rd, and Roger A. Converse.

*\*Henry H. Man* of New York City, for the defendant Judith A. Salisbury, guardian.

BURPEE, J.   In the article of his will submitted to this court for construction, the testator gave several trust funds to certain persons named, in trust for a specified purpose, and explicitly constituted those persons trustees for that purpose.   That purpose the testator declared to be the benefit of each of his grandchildren who should survive him; and by the plainly expressed terms of the trust, he provided that that purpose should be attained in a prescribed manner. The trustees particularly designated are the persons appointed to hold the trust funds separately given to them as separate funds, to invest them in specified bonds and securities, to receive the income and revenue thereof, and to "pay over the net income of said several

---

* The Court declined to receive briefs unless they were signed by attorneys authorized to practice in this State, whereupon *Walter M. Anderson, Esq.,* signed Mr. Man's brief, which was then accepted by the Court.

trust funds for the maintenance, education and support
of the grandchild for whom said trust fund is created
and held." Thus the testator explicitly declared the
purpose of this provision in his will, and the manner
in which and the agents by whom he intended that
his purpose should be carried on and consummated.
In his language we discover no indication nor intimation
of any intention to place any trust, or impose any duty,
upon any person or agent except the two whom he
named as trustees. Evidently no one else was desig-
nated or empowered to take and invest the trust funds,
or to receive the income thereof; and it seems equally
evident that no one else was directed or expected to
pay out the net income of any of these funds, and thus
to assume to carry out the most essential part of the
trust and to perform the duty explicitly imposed upon
the trustees. In them personally the testator put his
trust, and on them only he relied to administer it.
Certainly he showed no sign that he intended that any
third person should in any circumstances strip them of
their trust and undertake to substitute his judgment
and discretion for theirs in the execution of its duties.
But this would be the result if a person, by means of an
appointment as guardian of the estate of a grandchild,
may claim the entire net income of a trust fund as the
property of such child, and compel the trustees to pay
it over to the guardian to be disbursed by him in his
discretion. If this could be done, then any person,
no matter how incompetent or how much distrusted
by the testator or by his chosen agents, may by virtue
of a selection and appointment by a foreign court,
in *ex parte* proceedings unknown to any representative
of the testator, in effect supersede the trustees selected
by him, and take charge of the disbursement of the
large income from the great trusts he has created, and
by ignorance, or selfishness, or lack of ability, hamper

or defeat the consummation of his purpose. The admitted facts disclose that one or both of the parents of each of the grandchildren of the testator were living when he made his will and the codicil. The terms of these testaments make it plain that the testator did not intend that any of these parents should have any authority in the management of these trust funds or in the disposition of the income thereof. It appears, also, that no guardian of the estate of any grandchild had been appointed before the testator died. Manifestly, therefore, it should not be assumed that he had it in his mind to permit any guardian ever to interfere with his chosen trustees in the execution of the trust. Moreover, respecting Mrs. Salisbury, it appears that by the codicil made March 29th, 1921, Mr. Converse cut out of his will a gift of $100,000 to her, and left her no part or interest in his estate. He died April 4th, 1921. Mrs. Salisbury was not appointed guardian of her children until July 18th, 1921. These facts answer the argument of her counsel, that Mr. Converse supposed that by force of law Mrs. Salisbury would be entitled to receive the entire income of the trust funds he had provided for her children, and for that reason he did not specify that the payments should be made to her as their guardian.

It should be noted, also, that Mrs. Salisbury's guardianship over each of her children's estates will terminate when he shall reach the age of twenty-one; and that the trust by its terms may remain in existence until the child shall become forty years old. Is it to be presumed that this income should be paid over to him when he reaches his majority and his guardian's interregnum has ended? If so, it would seem that his minority was the only reason the testator had for withholding payments to him directly for an indefinite time. But evidently his minority was not the testator's

reason. It was his purpose to establish a control over the application of the income of each trust fund, which should continue possibly until the beneficiary should reach the age of forty, and certainly until it should be terminated at the discretion of the trustees in a manner distinctly stated. The rights of the guardian to receive and dispose of any property or beneficial interest of a ward are no greater than the rights of the ward, although they may be exercised by the guardian only. These wards had no property or rights in the income of the trust funds created by this article of their grandfather's will, except the right of each to have the net income paid out by the trustees for his maintenance and education until he should become twenty-five, or thirty, or thirty-five, or forty years of age, unless the trustees in their judgment deemed it best to pay to him a part of the principal of the trust fund at an earlier time. Until such time should come, the testator did not direct the trustees to pay over the income to any grandchild or to any person for him. On the contrary, creating a trust for the benefit of his grandchildren and meaning their maintenance and education to be that benefit, he expressly appointed persons to carry out this particular trust, and explicitly directed them to use the net income to accomplish this purpose.

Our attention is called to the fact that the testator used the words "pay over" in the thirteenth article of his will, and in other parts the words "pay over and apply" appear in connection with language which expressly gives to the trustees discretion in the application of an income. From this difference in phraseology it is argued that the testator had in mind some distinction between this trust and the others. We think no such distinction can be reasonably inferred. We observe that in the eleventh article the testator

directs the trustees in one clause "to pay over and apply the net income" of a trust fund to his son, his son's·wife and their children, in such manner as they shall think fit in their discretion; and in the next clause of the same article, he directs them, upon the death of his son, "to pay over and apply" the same income for the support of the son's wife and their children, without reference to manner or discretion. Again, in article seventeen, he gave the remainder of his estate to his executors "to pay over and apply" a portion of the income to the maintenance of certain children, and another portion to "be applied to the maintenance and support" of certain children, and to "pay over" to his children another portion or so much thereof as the trustees "in their absolute discretion" might think necessary for their support. We think that the testator in this will used the phrases quoted interchangeably and with the same meaning.

In our opinion, however, the testator in this article gave his trustees the widest discretion. He has stated and defined the terms of the several trusts in one sentence. Therein he declares that the persons named shall hold and invest the funds, and receive and pay over the income thereof for the maintenance and education of his grandchildren, with power to pay over parts of the principal to each grandchild when he shall reach a certain age, and with power to decline to make any such payment, or to reduce the amount of any such payment, or, in certain conditions, to double the amount of any payment; and to these clauses, which are separated from each other only by commas, he added, after another comma and a dash, the words: "all as in their judgment said trustees may deem for the best interest of the several beneficiaries." It seems to us plain that this clause was intended to apply to all the preceding clauses of the sentence of which it was the con-

cluding and qualifying part. Reading this and all parts of this will, we are drawn to the conclusion that the testator has given to his trustees the widest discretion in respect to every provision.

But the authority of the trustees to dispose of the income of these several trust funds is not unrestricted. The article in question explicitly gives them power to use it for the maintenance, education and support of each grandchild, and for no other purpose. It is hardly conceivable, however, that all of the net income of each of these separate trust funds could reasonably be expended for such purpose as fast as it will accumulate. In the will the number and amount of payments, and any period of time and the time when payments shall be made, are not specified nor even suggested; nor is it indicated that the net income in any period of time should be used entirely in that particular period. All these matters are evidently left to the discretion of the trustees. It is probable, if indeed it is not certain, that upon the net income of each of these funds there will be accumulations, after the trustees have expended what in their judgment is reasonable for the purpose of the trust from time to time. These accumulations, being a part of the net income, may be applied only to the same purpose for which the whole net income may be paid out. They may not be added to the principal or given to a beneficiary for his own use. Whether they shall be expended in any current year or in the next, or in some year or years in the future, is for the trustees to determine. If at the termination of the trust, there shall be in their hands any accumulations of income from that trust fund, the trustees shall pay them over to the designated beneficiary of that trust. There is no other obligation nor restriction upon them, nor any other power given to them. But no one of the separate trusts will terminate when the

grandchild for whom it is held shall reach the age of twenty-one; for nothing is more apparent in this will than that the testator had no respect nor consideration for the artificial line between a child's minority and his majority, or for the need of any protection or assistance from the guardian of any minor's estate. The trust for each grandchild is to be held until he shall reach the age of forty years, unless in their discretion the trustees shall sooner exercise their power to "advance the time" under the conditions and manner specified in the article which creates and defines the trust. Until the time when the several trusts shall thus be terminated, the duties and powers of the trustees relating to the several incomes and their accumulations will continue to exist and should be enforced and carried on by themselves.

Examination of this will demonstrates that whenever the testator gave any portion of his property directly to any person, he stated that he gave it to him or her by name or as one of a class; that whenever the testator created a trust fund, the income of which he intended a person to receive in hand, he directed his trustees to pay over such income to the beneficiary named; that whenever he set apart a trust fund, the income of which he intended for the support, or for the support and education, of any person, he directed his trustees themselves to pay over and apply, or to pay over, or to apply, such income for the purpose specified; and that, while in some cases payments are controlled by or conditioned upon the beneficiary's reaching a certain age, as twenty-five or thirty years, in no case is it stipulated that any payment shall depend upon or be affected in any way by his reaching the age of twenty-one years. These facts support the inferences we have drawn.

These conclusions are also in line with principles

which have determined the decisions of this court in other cases. *Leavitt* v. *Beirne,* 21 Conn. 1; *Watson* v. *Cleveland,* 21 Conn. 538; *Holmes* v. *Bushnell,* 80 Conn. 233, 67 Atl. 479; *Bridgeport Trust Co.* v. *Bartholomew,* 90 Conn. 517, 97 Atl. 758; *Hewitt* v. *Hicock,* 96 Conn. 176, 113 Atl. 172. See also: *New York Trust Co.* v. *Black,* 178 N. Y. App. Div. 4, 164 N. Y. Supp. 967; *Matter of Connolly,* 71 Misc. (N. Y.) 388; 2 Perry on Trusts & Trustees (6th Ed.) § 622.

The advice of this court upon the questions submitted by this reservation is as follows:—

*First.* Discretion is vested in the trustees during the whole period of each separate trust as to the amount of net income of that trust fund to be expended by them for the maintenance, education and support of the grandchild for whose benefit that trust fund was created and is held. (a) The trustees themselves should expend such amount of the net income of each separate trust fund as in their judgment they may deem for the best interest of the grandchild for whose benefit the trust fund was created and is held. (b) If any part of the net income of any separate trust fund shall not be so expended by the trustees during any period of time, the trustees shall retain that part and apply it from time to time thereafter, during the existence of that trust, for the maintenance, education and support of the grandchild for whose benefit that trust fund was created and is held; and at the termination of any separate trust, if any part of its net income remain unexpended, the trustees shall pay over such part to the grandchild for whom that trust was created and held.

*Second.* This question is disposed of by the answers to the previous questions.

In this opinion the other judges concurred.