OLIVE D. STEMPEL ET ALS. *v.* THE MIDDLETOWN TRUST
COMPANY ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 9—decided July 25, 1940.

*Ernest McCormick,* with whom was *Lucius F. Robinson,* for the appellee (named plaintiff).

*Carlos B. Ellis, Jr.,* with whom, on the brief, was *Russell Back,* for the appellant (defendant trustees and executors).

*Bertrand E. Spencer,* for the appellant (defendant Thompson, conservator for Mary V. Donovan).

*Aaron Nassau,* with whom, on the brief, was *Francis P. Rohrmayer,* for the appellants (plaintiffs Wanda E. S. Gager et al.).

*Allan K. Smith,* pro se, as guardian ad litem for the appellee (defendant John Gager, Jr.).

BROWN, J. Mary Donovan, of Middletown, referred to herein as the testatrix, died December 11, 1920, leaving as her only heirs two daughters, Mary V. Donovan herein referred to as Mary, born November 12, 1899, and Olive D. Stempel, born November 27, 1894. Mary since birth has been mentally deficient and will be so long as she lives. Olive married October 29, 1915, and the issue of this marriage are two daughters, Wanda, born July 26, 1916, and Audrey, born February 2, 1921. Wanda married February 6, 1937, and the issue of this marriage is John G. Gager, Jr.

By her will executed December 30, 1919, the testatrix named the defendants Abigail Thompson, Joseph Seiferman and the Middletown Trust Company executors, and gave the residue of her estate to them in trust, with power in the surviving individual trustee upon the death of the other to appoint his successor. The will provided: "So much of both of the income and principal of such trust fund as is necessary in the discretion of said Abigail Thompson and Joseph Seiferman or their successors to provide for the comfortable support of my daughter, Mary B. Donovan during the term of her natural life shall be expended or paid

over by said trustees for said purpose and further when and if my sister, Mrs. John Hoar shall have expended all of her own property said trustees shall use and expend so much of the income and principal of said trust estate as is necessary for her comfortable support during the term of her natural life. Upon the death of the last of said Mary B. Donovan and said Mrs. John Hoar to survive, said trustees shall pay over to my daughter, Olive D. Stempel all of the income of said trust fund then remaining during the term of her natural life and upon her death or in the event that she predecease either said Mary B. Donovan or said Mrs. John Hoar, then upon the death of the last survivor of them, all of the principal of my estate then remaining shall be divided by said trustees equally among the issue of the body of her the said Olive D. Stempel who then survive, equally as nearly as may be per stirpes, provided however, that if no issue of her body then survive, then all of the principal of said estate then remaining shall be divided among my heirs-at-law in proportion to their heirship and upon the principal of said fund being distributed in accordance with the directions of this clause, then said trust shall cease and determine."

The will was admitted to probate December 27, 1920, and the three executors qualified February 15, 1921. The defendant trust company qualified as the duly appointed conservator of Mary. Olive appealed to the Superior Court from the allowance of the will, on the ground that it was the result of undue influence, and also brought suit against the estate to recover $3452.28 upon a claim disallowed by the executors. On October 30, 1922, the defendants Thompson, Seiferman and the Middletown Trust Company, as executors and trustees, executed an agreement with Olive to become effective upon its approval by the

Court of Probate, providing that: her claim for $3452.-28 should be paid in full; in each calendar year from and after January 1, 1923, and until the death of the survivor of Mary and Mrs. Hoar, or until the death of Olive, whichever happened first, surplus income of the trust, viz. net income in excess of the amount required for the support of Mary and Mrs. Hoar, up to $600, and if the surplus income should equal or exceed $2000, an additional $400 thereof, should be paid to Olive; the remaining surplus income should be accumulated and added to the principal; the two proceedings brought by Olive should be withdrawn; and she should release the estate "from all claims and demands which she shall have or claim against said estate except by virtue of this contract and except by virtue of said will of Mary Donovan." At the time, the parties assumed the will required surplus income to be accumulated and added to principal. On November 16, 1922, the agreement was approved by the Court of Probate and the actions were withdrawn. On February 9, 1923, Mrs. Hoar died without having become eligible to receive any payments under the will. On March 23, 1923, the executors filed their final account and qualified as trustees.

At the death of the testatrix the value of the residue of her estate subject to the trust was $76,781.84. Of the annual payments mentioned in the 1922 agreement, the trustees paid Olive $600 each year in 1923, 1924 and 1925, and $1000 in 1926, although the aggregate of these payments exceeded the surplus income received by $5228. From 1927 on, the surplus income year by year exceeded the payments, all of which the trustees made to Olive therefrom pursuant to the agreement, and largely in consequence of a fortuitous sale of real estate by the trustees during 1927, in each of the succeeding years, after payment under the

agreement had been made to Olive, there remained a very substantial balance of surplus income for that year. This balance for the years 1928, 1929 and 1930 aggregated $16,739.01. From January 1, 1923, to November 9, 1930, the plaintiffs Olive and her children were without even some of the necessities of life and largely dependent for their support, maintenance and education, upon the income received by Olive under the 1922 agreement.

On September 22, 1930, this action was brought by Olive, individually, and Wanda and Audrey by her as parent and next friend, against the trustees and conservator. The gist of the complaint is that: the will either failed to dispose of surplus income or gave it to Olive; the October 30, 1922, agreement was based upon the mistaken assumption that the will required surplus income to be accumulated and added to principal; in recent years net income had greatly exceeded the amount necessary for Mary's support; the income of Olive's husband was totally inadequate to support his family; and in equity the surplus income should be available for the support of the plaintiffs. The complaint prayed for reformation of the agreement by cancellation of the provision limiting the amount of surplus income payable to Olive in any one year to $1000, and of the provision for the accumulation and addition to principal of the remaining surplus income; for declaratory judgments determining the status of surplus income, the rights of Olive and Mary thereto as beneficiaries under the will or as the heirs of the testatrix, and the duties of the trustees with respect to the disposition thereof; and that they be ordered to pay over a portion of the surplus income to Olive for the support of the plaintiffs. On November 22, 1930, the pleadings were closed putting the plaintiffs to the proof of their complaint. On November 4, 1930, Olive

was appointed guardian of the estates of the minors Wanda and Audrey. She is still guardian of the latter, but on December 1, 1936, Francis P. Rohrmayer became the guardian of the former.

On November 9, 1930, Olive individually and as "legal guardian" of Wanda and Audrey, the trustees and the conservator made a written agreement which pursuant to stipulation of the then parties to this suit was incorporated in and approved by an "interlocutory judgment" in this action entered December 27, 1930. This agreement provided that: it should become effective upon its approval by the Court of Probate; it should remain in effect for a period of two years ending November 9, 1932, or should the circumstances of Wanda and Audrey remain unchanged, for a further period of two years ending November 9, 1934; each year while it remained in effect the trustees would pay over to Olive as legal guardian of Wanda and Audrey for their support one-half of the surplus income, which as defined constituted the balance of income for that year after certain sums including payments to Olive under the 1922 agreement had been deducted; in the interim the suit should remain on the docket without further proceedings therein; and the agreement should be conclusive of the rights of the parties under the will "or otherwise" up to its termination and should be construed as a waiver of any right on the part of the plaintiffs to question "the application of surplus income heretofore accounted for in the annual accounts of the trustees." On the trustees' application at a hearing January 14, 1931, following notice by publication, the Court of Probate approved the agreement. It was extended for two years by agreement of the same parties. It was again extended by their agreement for a further period of two years ending November 9, 1936, to become effective upon approval thereof

by the Court of Probate. Pursuant to stipulation of the then parties to this suit, this extension agreement was annexed to and approved by an order approving compromise settlement entered in this suit January 11, 1935. On January 24, 1935, the Court of Probate acting on the administration of the testatrix' estate, on the trustees' application approved this agreement, reciting its hearing had been held "after specially mailed notice to the parties in interest."

The trustees performed the 1922 agreement through the year 1936 and the 1930 agreement as extended to November 9, 1936. During the years 1923-1936 the smallest amount expended by them for the support of Mary in any one calendar year was $1591.53, and the largest $2253. The average was $1917.73. In each of the years 1923 through 1927 the net income was either under or somewhat over the amount necessary for Mary's support. During the years 1928 through 1936, however, it varied from a low of $7165.51 in 1930 to a high of $10,719.70 in 1936, the average per calendar year being $9081.79. Of the income for the years 1923 through 1936 not used for Mary's support, the trustees paid Olive under the 1922 agreement $12,800, to the guardians of Wanda and Audrey $9776.41, and transferred to principal account $45,085.51. The inventory value of the trust fund as of December 31, 1936, was $175,990.31. From 1930 through 1936 the plaintiffs were almost entirely dependent for their support upon the payments to them under the 1922 and 1930 agreements, and were in dire financial need. Approaching November 9, 1936, the trustees gave notice that they would not consent to a further extension of the 1930 agreement.

On June 24, 1938, the trust company and Joseph Seiferman as surviving executors were made parties defendant in this action; Francis P. Rohrmayer was

made guardian ad litem for Audrey; and John G. Gager, Jr., was made a party defendant on behalf of himself and the contingent remainder interests under the will, and Allan K. Smith was appointed his guardian ad litem. The executors and trustees filed an application that the court construe the will to determine whether any portion of the surplus income is intestate estate; if so, the method to be followed in ascertaining such portion and in providing for its disposition; and whether Mary's share thereof should be considered in computing amounts payable for her support under the terms of the will. On July 13, 1938, Wanda, who had become of age, and of whose estate Olive's guardianship had terminated July 31, 1936, and Audrey by her guardian ad litem, pleaded acquiescence in Olive's actions herein in their behalf in so far as these were not inconsistent with the claim that from and after November 9, 1936, during Mary's life, "the net income of the trust . . . not used for the support of Mary . . . must under the terms of said trust be accumulated and added to the principal thereof." John G. Gager, Jr., on behalf of himself and the contingent remainder interests under the will, by his guardian ad litem pleaded in acquiescence adopting the answer of the trustees and conservator, and approving the execution by the trustees of the 1930 agreement as extended. December 23, 1938, the plaintiffs filed an application for a declaratory judgment determining the validity of the 1922 and 1930 agreements, the construction of the latter, and the effect of their performance upon the rights of the various parties. The executors, trustees and conservator filed an application for advice as to their respective duties and obligations should it be held that the trustees had erred in the disposition of surplus income theretofore made by them.

The purport of the significant conclusions in the court's judgment entered June 30, 1939, is that for the period from the commencement of the trust through 1938, net income of the original fund as invested and reinvested, in excess of the amounts thereof expended for Mary's support constitutes intestate estate, and that all funds in the hands of the trustees representing accumulations of such net income, together with all funds to be returned to the trust as required by the decision in restoration of moneys paid out under the 1922 and 1930 agreements, are distributable as such intestate estate forthwith under the direction of the Court of Probate; from and after 1938 net income in each calendar year in excess of the amount expended during such year for Mary's support constitutes intestate estate distributable from time to time as the Court of Probate might order; in determining the amount of net income to be expended for Mary's support in any calendar year after 1938 her personal estate and income from sources other than the provisions of the will in her favor must be taken into account; and both the agreement of 1922 and that of 1930 are voidable as to Mary V. Donovan. These conclusions are challenged by the assignments of error. Some additional facts are recited in the opinion.

The fundamental question for determination is whether surplus income in any calendar year during the life of the survivor of Mary and Mrs. Hoar constitutes intestate estate currently distributable to Olive and Mary, the testatrix' heirs. The answer lies in the determination of the intent of the testatrix as evidenced by the will. In a case of this nature "the question whether the excess shall accumulate and be added to the principal or shall be otherwise disposed of depends primarily upon the intent of the testator." *New Haven Bank* v. *Hubinger*, 117 Conn. 417, 420, 167

Atl. 914. In the opinion in that case after reviewing our decisions dealing with this question as presented in its varying aspects, at page 423 we summarized the result by this statement of the rules of interpretation involved: "It may be stated, therefore, generally speaking, that where the will discloses an intent that excess income shall accumulate, or its distribution as it accrues will be contrary to the scheme of the will, it should be permitted to accumulate, unless, indeed, such an accumulation would be invalid; *Hoadley* v. *Beardsley* [89 Conn. 270, 280, 93 Atl. 535]; *Belcher* v. *Phelps* [109 Conn. 7, 18, 144 Atl. 659]; *Wilson* v. *D'Atro,* 109 Conn. 563, 567, 145 Atl. 161; *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 222, 152 Atl. 69; *Moeller* v. *Kautz,* 112 Conn. 481, 152 Atl. 886; that where the will discloses an intent that there shall be no accumulation of excess income or such an accumulation would be contrary to the scheme of the testator, or where the will discloses no intent either way, the excess income should be distributed to those entitled to it as it accrues."

It remains to apply these principles in this case. There is no reference in the will to surplus income to indicate the testatrix' intent. From its provisions it is clear that she was primarily concerned with making provision for the support for life of her incompetent daughter Mary and of her sister Mrs. Hoar should she become destitute. That she failed, however, to anticipate the possibility that there would be income in excess of the amount required for their support, and instead contemplated that it would be insufficient for this purpose, is evidenced by the authorization to the trustees to use "so much of the income and principal" for their support, and more particularly by her language used in directing the disposition of the income and principal after the death of the survivor. It is the

income from the "trust fund then remaining" that is given to Olive until her death, and the "principal of my estate then remaining" that is given to the remainder beneficiaries. Assuming, as we may, that when she executed her will making these dispositions, the testatrix had in mind the value, character and probable income possibilities of her estate, she undoubtedly conceived that the support provided by it for Mary and Mrs. Hoar would require the use of at least a part of the principal, while there is nothing to warrant the assumption that the sudden substantial increase in value of the estate which occurred seven years after her death could have been in her mind at that time. Had she contemplated the possibility of substantial surplus income, being on intimate and friendly terms with Olive and her family and fully conversant with their acute financial need, as the finding shows she was, the conclusion is practically inescapable that she would have given it to Olive, to whom she did give all of the income upon termination of the necessity of providing for the support of Mary and Mrs. Hoar. In the words of the trial court, the testatrix "never conceived the possibility of accumulated surplus income, but rather foresaw a likely shrinkage of the principal of the trust fund and, hence, completely overlooked the necessity of providing for any disposition of surplus income," and its conclusion that under the *Hubinger* case the surplus income is intestate is correct.

Except for the fact that the *Hubinger* case involved a trust to provide payment of an annuity instead of one to provide support as here, the two cases are practically on all fours. That in one the testator fixes the amount of income to be paid over to the beneficiary, and in the other leaves the amount to be determined by the latter's need for support as ascertained by trus-

tees, is not a difference sufficient to distinguish them as contended by the appellants. The court's determination that the surplus income is intestate, effectively avoiding, as it does, tieing it up and so depriving Olive and her children of the enjoyment of it for what might prove a long term of years "during the period of their lives, when it would mean most to their careers and position in life," is a result which fortifies its conclusion. Belcher v. Phelps, 109 Conn. 7, 20, 114 Atl. 659. The case of Jaretzki v. Strong, 98 Conn. 357, 119 Atl. 353, chiefly relied upon by the appellants as authority that the surplus income should not be held intestate is clearly distinguishable from this case. In that case the trusts instead of being for life, as here, were until the beneficiaries had reached certain ages, and in the event one died before the termination of the trust the money was not to be paid to his estate but he was given a power of appointment. We held that under the terms of the will the beneficiary of each of the trust funds was given the net income, with a restriction limiting the power of the trustees to pay it to him before the termination for any other purpose than his maintenance, education and support, and with power in them to withhold income in any year and use the amount so withheld in any future year for the purposes specified; with the result that the income would not become a part of the principal and that at the termination of the trust the beneficiary would be entitled to receive any balance in the hands of the trustee. The distinction between that case and the one before us lies in the fact that in the Jaretzki case there was a gift to the beneficiary of the entire net income, though enjoyment might be postponed to the termination of the trust, whereas here there was no gift of income beyond that required for the necessary support of Mary and Mrs. Hoar.

The judgment in the present case correctly provides that the individual trustees in the calendar years after 1938, in determining the amount required for Mary's support, "may properly include a reasonable reserve represented by a sum in excess of that required for [her] proper care and comfortable support" in such year. *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 278, 135 Atl. 555. This provision in the judgment, in connection with the results to be realized from others therein, looking to the restoration to Mary's conservator of her portion of the intestate income for the years 1923 to 1938 inclusive, provides a substantial safeguard for her future support. It also affords a practical answer to the appellants' claim that this support is endangered by the court's decision, as well as to the claim that the determination of what constitutes "so much of * * * the income * * * as is necessary (in the trustees' discretion) * * * for the * * * support of Mary," essential to fixing the surplus income, can only be properly ascertained as of the date of her death. The court's determination that after 1938, surplus income must be determined and distributed on the basis of calendar years is in accord with our rule. *New Haven Bank* v. *Hubinger,* supra, 428. The contention that the surplus income should not be held to be intestate because to do so may result in substantial payments of intestate income to Mary's conservator by reason of the fact that she is an heir of the testatrix, and so in large measure in substituting his discretion as to expenditures for her, for that of the trustees as provided by the testatrix in the will, is not of great weight. Even of less weight is the possible further claim that to so hold would violate the will by depriving the trustees of their discretion to conserve the principal. Since the testatrix contemplated only the necessity of drawing upon principal for the support of

Mary and Mrs. Hoar because of lack of sufficient income, no such discretion with relation to surplus income could have been within her testamentary intent.

That in determining the amount of net income to be expended for Mary's support in any calendar year after 1938, her personal estate and income from sources other than by the provisions in her favor in the will must be taken into account, is indicated by the context of the will and is supported by authority. The provision is that the trustees shall expend for Mary "so much . . . as is necessary . . . to provide for [her] comfortable support." The intent so expressed limits the payments to those required for such support by reason of her own inability to provide it. In so far as she receives from some other source personal estate which enables her to make such provision, the necessity essential to taking under the will disappears. Accordingly her personal estate, her share of accrued past intestate surplus income, as well as intestate surplus income currently received by her, are to be taken into account by the trustees in future payments to her. *Hull* v. *Holloway*, 58 Conn. 210, 217, 20 Atl. 445; *Bridgeport-City Trust Co.* v. *Beach*, 119 Conn. 131, 138, 174 Atl. 308.

The 1922 agreement, executed upon the assumption that the will required the accumulation of the income not expended for the support of Mary, purports to dispose of a portion of this surplus income. Olive, the executors and the trustees were the only parties to the contract. Since, as is correctly determined by the judgment in this case, the surplus income during the life of Mary is intestate estate, execution of the agreement by someone with authority to act for and to bind her as one of the two heirs, was essential to render it binding as to her interest. No one executed it upon her behalf. The 1922 agreement was therefore in-

effective as regards any interest she had in the intestate income. Olive, the other heir, having taken no appeal from the court's judgment so holding, cannot be heard to object. Mistake, as claimed by the executors, does not figure in the situation. If there was an underlying mistake, only equity could set aside the agreement under rules governing its exercise of that power, and the action before us cannot well take the place of a resort to equity for such a purpose. Moreover, neither Olive nor the executors want to set it aside, and Mary, not being a party to it, would be in no position to seek such relief. The court's conclusion concerning this agreement was correct.

The terms of the 1930 agreement indicate that its real purpose was to postpone the adjudication of the issues raised by the pleadings in the present case, and to effect in the interim an arrangement whereby part of the surplus income might be used for the support of Wanda and Audrey. Since by our decision the income so utilized was intestate estate, one-half of which belonged to Mary as one of the two heirs, unless she is bound by the execution of the agreement by her conservator, the contract is ineffective as regards her interests. By § 4819 of the General Statutes a conservator's powers are to "manage" the ward's estate "and apply . . . net income . . . required" and, "if necessary, any part of the principal . . . to support him and his family and to pay his debts." There is no express provision in the statute conferring authority upon a conservator to enter into such a contract as the one here in question, and this court has said: "The statute neither expressly nor impliedly authorizes the conservator to make contracts in the name of the ward, and the ward is legally incapable of making a contract." *Brown* v. *Eggleston,* 53 Conn. 110, 119, 2 Atl. 321. This statement was in the nature of a dictum

in that case, however, and is not in accord with either prior or subsequent decisions of this court. As early as the case of *Hutchins* v. *Johnson,* 12 Conn. 376, 382, it was pointed out that a conservator could submit claims in behalf of the estate to arbitration, which necessarily involves an arbitration agreement. In *Palmer* v. *Cheseboro,* 55 Conn. 114, 116, 10 Atl. 508, it was held that a conservator could make a lease of the ward's property, that power being implied in the statutory provision that he should have charge of and manage the estate of the ward. See also *State* v. *Washburn,* 67 Conn. 187, 195, 34 Atl. 1034, and *Church* v. *Rosenstein,* 85 Conn. 279, 281, 82 Atl. 568. The true rule deducible from these decisions is that a conservator does have implied power to make contracts so far as they are involved in the exercise of the powers expressly granted him.

In the case of *Johnson's Appeal,* 71 Conn. 590, 598, 42 Atl. 662, a will was discovered and probated after the partial settlement of the estate as intestate, in the course of which the administrator had made payments to several heirs. In consequence of the administrator c. t. a.'s difficulty in recovering these payments, an agreement was made in settlement of the parties' rights, in which the conservators of three of the heirs joined. Although at the time the statute concerning the settlement of disputed claims against estates (General Statutes, § 4939) did not include conservators, this court held that the Superior Court on appeal from probate had the power to approve that settlement. The case is authority that upon the situation presented in the case before us the agreement as to the distribution of the excess income was a proper matter to submit to the Court of Probate for approval. In the absence of any appeal taken therefrom such approval granted in the proceedings in that court to

which Mary's conservator was a party was conclusive upon the parties thereto, including Mary. *Bidwell* v. *Beckwith*, 86 Conn. 462, 470, 85 Atl. 682. The 1930 agreement therefore was effective as to all of the parties to it and the payments made thereunder were properly made. It was not effective as a ratification to give validity to the 1922 agreement, however, as claimed by the executors. The words "or otherwise" in the 1930 agreement relied upon in this connection, are not sufficient to support such a construction. No relinquishment of a "known right" being involved there was no waiver. *National Transportation Co., Inc.* v. *Toquet*, 123 Conn. 468, 475, 196 Atl. 344.

The judgment correctly prescribes the course to be followed by the parties, including suggested resort to the Superior and Probate Courts where necessary, for realizing their rights as determined. Although not strictly within the issues raised upon this appeal, we add this further suggestion as to the method of accounting which the trustees should use, in the hope of forestalling further unnecessary litigation. In computing the intestate income up to January 1, 1939, it should be determined annually and is distributable upon such determination to Mary and Olive as the testatrix' heirs. As the trial court adjudged, following the determination of intestate income so distributable, the payments thereafter made by the trustees for Mary's support should be treated as paid from her share in such intestate income so long as her share in such intestate income as so determined was adequate therefor. The payments by the trustees to the plaintiffs pursuant to the terms of the 1922 agreement up to the time when the 1930 agreement took effect, should be treated as paid from Olive's share in the intestate income as so determined, and where any such payment exceeded her share in such intestate income as so de-

termined such excess should be charged against her share in the intestate income thereafter determined. Interest at 6 per cent should be charged against Olive during the year ensuing, upon any charge against her in excess of the intestate income due her as so determined, and treated as income accruing upon the fund during that year. The trustees clearly acted in good faith in withholding the payment of excess income and they have made no individual profit from so doing; there is no sufficient reason why they should be penalized by charging against them a greater sum than that actually earned upon the excess income transferred to the principal. *Ellis* v. *Kelsey*, 241 N. Y. 374, 381, 150 N. E. 148. As the sum so earned would be included in the excess income to be distributed to Mary and Olive, they will receive the benefit of it. By following the directions in the judgment as thus amplified the rights of all parties will be properly safeguarded.

There is error only in the conclusion of the trial court that the agreement of November 9, 1930, and those extending its operation are voidable as to Mary V. Donovan; the case is remanded with direction to enter judgment in accordance with this opinion.

In this opinion the other judges concurred.